Rohn A. BAUMGART, Respondent,

v.

Michelle A. BAUMGART, Appellant.

No. WD 52566.

Missouri Court of Appeals,
Western District.

April 22, 1997.

As Modified May 27, 1997.

Thomas E. Loraine, Roger M. Gibbons, Osage Beach, for appellant.

Lewis Z. Bridges, Lake Ozark, for respondent.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

 Michelle A. Baumgart filed a motion to modify her dissolution decree. She asked that primary physical custody of her two daughters be awarded to her because of alleged abuse of one of the children by her ex-husband, Respondent Rohn A. Baumgart. The trial court gave her temporary custody of the children after a hearing at which some evidence of child abuse was presented, and Mr. Baumgart was granted only supervised visitation. Two and one-half years later, however, the trial court ruled that a substantial and continuing change of circumstances had occurred, but then left custody in Mr. Baumgart. His order did not explain the basis of his ruling.

Mrs. Baumgart appeals. In her first point, she alleges that, although she brought the motion to modify, once she was granted temporary custody of the children pending ruling on her motion, then the burden of proof shifted to her husband and it is now he, not she, who must prove a substantial and continuing change of circumstances in order to win back custody of the children. We disagree. A temporary order is just that, temporary; it does not change the underlying burden of proof on the motion to modify. We do find, however, that the fact that Mrs. Baumgart has had actual custody since November 1992 does constitute a change of circumstances which, in an appropriate case, could justify a modification of the formal custody award.

The only other evidence of a change of circumstances offered below was evidence offered by Mrs. Baumgart in support of her claim of child abuse. While this evidence did not mandate a finding that child abuse had occurred, if believed it also would have sup-

ported a modification of custody. Yet, while the court found a change of circumstances, it ordered custody to remain with Mr. Baumgart. Moreover, it did so after a lengthy delay of more than two and one-half years after it had heard evidence and did so even though the record indicates that the court did not believe that the record made at the hearing on the abuse issue was adequate to permit a final decision.

 It is to protect the child even when the parties do not adequately present such evidence that Section 452.423 requires the appointment of a guardian ad litem to investigate such allegations and to assist the court. The court has an obligation to ensure that the guardian performs his duties.

 Here, while a guardian was appointed, the record does not reveal that he undertook any investigation or otherwise performed his duties. As a result, the record below was inadequate and does not support the court's determination that there was a substantial and continuing change in circumstances but that custody should be in Mr. Baumgart. Accordingly, we reverse and remand for appointment of a new guardian ad litem who shall immediately conduct all necessary investigation, after which a new hearing shall be held at which issues relating to child abuse and custody shall be resolved and custody awarded in the best interests of the children.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rohn A. Baumgart and Michelle A. Baumgart were married and had two children, Kristina Marie Baumgart and Amber Michelle Baumgart. The couple separated in May 1992, when the children were two years old and seven months old, respectively, and Mr. Baumgart moved to Indiana with the children. He filed a Petition for Dissolution of Marriage, and on September 11, 1992, the circuit court of Miller County, Missouri, entered a dissolution decree. In that decree,

---

1. While the statutes do not explicitly require findings of fact in ruling on a motion to modify, we note that their use here might have resolved

many of the issues before us on this appeal, and that such findings always are helpful to the appellate court.

Judge Gary Schmidt granted the couple joint legal custody of their children, with primary physical custody being given to Mr. Baumgart. He was allowed to remove the children to Indiana, and Mrs. Baumgart was allowed visitation. The judge also ordered Mrs. Baumgart to pay $100 per month in child support.

In October 1992, one month after the decree was entered, the circuit court of Gibson County, Indiana, placed Kristina and Amber in emergency wardship while it investigated allegations of sexual abuse of Kristina by Mr. Baumgart. Although it is unclear how the Gibson County Division of Family and Children investigation arose, it is clear that the Indiana court ordered that the children be placed with their paternal grandmother, and that Mrs. Baumgart be allowed unlimited visitation. On November 24, 1992, the court continued the temporary wardship of the children, but ordered that the children be placed with Mrs. Baumgart until a review hearing. At that time, Mrs. Baumgart, now remarried, brought the children back to Missouri.

On January 8, 1993, Mrs. Baumgart filed a motion in Missouri to modify the dissolution decree as to child custody. She sought physical custody of the children, alleging abuse by Mr. Baumgart. Three days later, on January 11, 1993, the circuit court of Gibson County, Indiana, dismissed its investigation of child abuse. The record does not reveal why the investigation was officially dismissed. Mr. Baumgart says it was because the allegations were untrue. Mrs. Baumgart says it was because she now had actual custody of the children and had filed a motion for permanent custody. In any event, it is uncontested that despite the dismissal of the Indiana action, the children remained in Mrs. Baumgart's custody in Missouri, at least part of the time over the objections of Mr. Baumgart.

The circuit court of Miller County, Missouri, held a hearing on Mrs. Baumgart's motion to modify on October 8, 1993, nine months after it had been filed. The record reveals that a guardian ad litem had been appointed by that date and appeared in person at the hearing. During the hearing,

Blanche Carter, Mrs. Baumgart's mother testified that on one occasion when she was changing Mrs. Baumgart's infant son's diaper, Kristina, then age two or three, had asked if she could kiss the infant's genitals. Mrs. Baumgart also called Dr. Patrick Brophy, the psychologist who interviewed Kristina Baumgart at the request of the Gibson County, Indiana, Division of Family and Children. Dr. Brophy testified that Kristina indicated that she had been inappropriately touched and had touched her "father's" "peepee bob." He testified that after talking with Kristina, who was then approximately three years old, it was his professional opinion that she had been sexually molested by her father. Dr. Brophy recommended that Kristina be placed in a neutral foster home.

On cross-examination, Dr. Brophy admitted that he only spoke with Kristina for 45 minutes, and did not talk to Mr. Baumgart at all. Dr. Brophy further testified that he did not know Kristina had been staying with her mother for a few days shortly prior to the allegations of sexual abuse, and he did not know that Mrs. Baumgart had remarried or whether Kristina called Mrs. Baumgart's new husband "father." The guardian ad litem asked a few additional general questions of Dr. Brophy, but did not examine any other witnesses or offer any witnesses, exhibits, reports, suggestions, recommendations, or comments of any kind to the judge.

At the conclusion of the hearing, Judge Schmidt granted Mr. Baumgart's motion to dismiss the Petition, apparently because of failure to adequately allege certain matters as required by Section 452.480, but gave Mrs. Baumgart 30 days to amend her Petition.

The judge also indicated he wanted copies of the Indiana proceedings and additional testimony from other witnesses because of the incompleteness of the information about the Indiana allegations. He continued the matter for further hearing once those documents were available. The judge also stated that he was going to continue the original decree of joint legal custody, but that Mrs. Baumgart would be given temporary physical custody and Mr. Baumgart would be allowed only supervised visitation pending resolution of the abuse allegations. It is evident from

the transcript that the judge had not yet made a final determination as to whether he believed abuse had in fact occurred or if so, who had committed the abuse.

Mrs. Baumgart filed first and second amended motions to modify the dissolution decree to which she attached certain documents from the Indiana action showing the history of the proceedings in that state. No new hearing was held for over 18 months, however. Finally, on April 28, 1995, a new hearing was scheduled. The only further evidence offered by either party was evidence of legal fees incurred by Mrs. Baumgart. In addition, Mrs. Baumgart offered to produce a custodian's affidavit for the Indiana records, but the court said it would not be necessary to do so. The records confirmed that allegations of abuse had been brought and the children removed from the father's care and placed in the mother's custody, and that the proceeding had been dismissed. No reason for dismissal was identified in the records. The guardian ad litem again presented no evidence, recommendations, or report, nor so far as the record shows had the guardian investigated the children's situation. To the contrary, it appears from a comment made by the guardian at the hearing that he was unaware of the children's current situation.

Judge Schmidt indicated at the April 1995 hearing that he would rule based on the evidence presented. He did not do so for over nine months, however. Finally, on February 16, 1996, Judge Schmidt entered a decree and judgment of modification. In that decree he stated that there was a substantial and continuing change of circumstances which made the original decree unreasonable and required him to alter the original custody order, although he does not identify what he found was the change of circumstances. The only change alleged by Mrs. Baumgart's motion was that Mr. Baumgart has abused the children and should not have custody. In addition, of course, Mrs. Baumgart had had actual custody of the children for all but a few months of the three and one-half years since the entry of the dissolution decree. Nonetheless, the judge did not change custody to Mrs. Baumgart.

Rather, he left primary physical custody in Mr. Baumgart, but did order a revision to Mrs. Baumgart's visitation schedule.

Mrs. Baumgart filed a Motion for Reconsideration, in which she again alleged that she should have custody and further alleged that Mr. Baumgart was now living in a filthy home without running water and which was not fit for habitation by the children. Judge Schmidt denied the motion without a hearing. This appeal followed.

## II. STANDARD OF REVIEW

We must affirm a trial court's order modifying a dissolution decree unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Welker v. Welker*, 902 S.W.2d 865, 867 (Mo.App.1995); *Moore v. Moore*, 849 S.W.2d 652, 654 (Mo. App.1993). The judgment must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect. *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996). The trial court's determination must be given greater deference than in other cases. *Humphrey v. Humphrey*, 888 S.W.2d 342, 345 (Mo.App. 1994).

## III. THE TRIAL COURT ERRED IN FINDING A CHANGE OF CIRCUMSTANCES BUT LEAVING CUSTODY IN THE FATHER WITHOUT MAKING FINDINGS OR ADDRESSING ISSUES OF CHILD ABUSE

### A. General Rules Regarding Custody.

■ The parties agree that a court must determine custody in the best interests of the child. § 452.375.2, RSMo Cum.Supp.1996. When so doing, a court must consider all relevant factors, including any history of abuse of any individuals involved. § 452.375.2(5), RSMo Cum.Supp.1996. A court cannot modify a prior custody decree unless it finds that, based on facts that have arisen since the prior decree, a change in circumstances has occurred making modifica-

tion of the prior order in the best interests of the child. § 452.410, RSMo 1994. The court is not required to explicitly state what it found to be the change of circumstances, if the evidence is sufficient to support a finding that such a change occurred. *In re Marriage of Bertz,* 856 S.W.2d 932, 935 (Mo.App. 1993).

### B. Burden of Proof Of Change of Circumstances Remains on the Parent Seeking Modification.

The parties agree that in the usual case the party who seeks to modify the custody arrangement set out in the dissolution decree has the burden of proving there is a substantial and continuing change of circumstances. *McElroy v. McElroy,* 910 S.W.2d 798, 803 (Mo.App.1995); *Wilson v. Wilson,* 873 S.W.2d 667, 670 (Mo.App.1994).

The parties disagree, however, as to whether the usual burden of proof rule is changed when the trial court issues an interim order, as in this case, transferring custody to the other parent pending final resolution of the motion to modify, so that the children reside with the originally non-custodial parent for an extended period. In this situation, Mrs. Baumgart argues, she should be held to have become the custodial parent. Therefore, she argues, it is Mr. Baumgart who now bears the burden of proving that a substantial and continuing change of circumstances has occurred which would justify again vesting custody in him.

We disagree. It is Mrs. Baumgart who has brought the motion to modify custody, not Mr. Baumgart. What she seeks is to modify the original dissolution decree; he is not seeking to modify the temporary custody decree. The original decree's award of primary custody is still in effect. That award was only temporarily suspended, not voided, by the temporary order transferring custody to Mrs. Baumgart *pendente lite.*

In so holding, we are guided by the Eastern District's reasoning in *D.K.L. v. L.C.L.,* 764 S.W.2d 664, 666 (Mo.App.1988), in the face of an analogous argument by the wife who had been granted temporary custody of the children three weeks of the month pending the final dissolution decree. In rejecting the argument that issuance of this temporary award of custody increased the burden on the husband to show why the final custody decree should give him custody, the court stated that a *pendente lite* award:

> is simply that, a temporary award pending the final hearing. *Tzinberg v. Tzinberg,* 631 S.W.2d 681, 683 (Mo.App.1982). The purpose of the PDL order is to provide temporary relief pending a full hearing on the merits.

*D.K.L.,* 764 S.W.2d at 666.

In other words, a temporary order is not itself a full decision on the merits of the custody issue. If a *pendente lite* award resulted in a change in the formal burden of proof, it would be more than a temporary order; it would in effect be a ruling on the motion to modify. Certainly the temporary order in this case was not intended to have such an effect.[2] The judge requested further evidence which he said was necessary before he could make a decision on the allegations of abuse and the motion to modify.

For these reasons, we reject Mrs. Baumgart's argument that entry of the order temporarily giving her custody shifted the burden of proof to Mr. Baumgart to show a change of circumstance sufficient to revest him with custody.

### C. Actual Custody by the Nominally Non–Custodial Parent Is Itself a Change of Circumstances Which May Justify a Modification of Custody in an Appropriate Case.

Although we hold that the temporary order did not change the parties' burden of proof, this does not mean that the *underlying facts* that Mrs. Baumgart had actual custody of the children for the year prior to the temporary transfer of formal custody, retained custody for the following two and one-half years until the trial court ruled on

---

**2.** *Tzinberg,* cited in *D.K.L.,* similarly held that the award of temporary maintenance *pendente lite* did not shift the burden to the husband to prove

that the wife was not entitled to maintenance in the dissolution decree. 631 S.W.2d at 683.

the motion to modify, and indeed has retained custody pending appeal, are not relevant to the decision on the motion to modify custody. To the contrary, these facts necessarily have a heavy influence on the ultimate determination whether Mrs. Baumgart has met her burden of showing a substantial and continuing change of circumstances which justifies a modification of custody.

■ Section 452.375.2, which guides a trial court in making its initial custody determination, also sets forth factors the court should consider in determining whether to modify custody based on matters arising since the original decree. *Guier*, 918 S.W.2d at 947. These factors include (and included at the relevant time):

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent meaningful contact with the other parent.

§ 452.375.2.

Clearly, factors (3) and (4) require the court to consider where the children have been residing over the years prior to the court's ruling, and any disruption which would result if the children were uprooted and returned to their father's custody. Indeed, it is somewhat ironic to note that it is to avoid just such disruption that Missouri originally developed the rule prohibiting a change of custody absent proof of a substantial and continuing change of circumstances. As *Moore* states:

> Missouri courts have found that there is much value in allowing children to remain with the parent who has had custody over a long period of time as against uprooting them to settle elsewhere. As a result, once custody has been adjudicated, it is presumed that the custodian remains suitable and the burden of proving a change of circumstances justifying a change of custody is on the party seeking the change.

849 S.W.2d at 655 (citation omitted). Where, as here, the nominally non-custodial parent has in fact had custody, these same principles should be heavily weighed in making the determination whether a substantial and continuing change of circumstances has occurred which justifies modification of the original custody order. *See, e.g., McClain v. Chaffee*, 894 S.W.2d 719, 723 (Mo.App.1995) ("Modification of a custody order is proper where the custodial parent allowed the child to stay with the noncustodial parent for an extended period of time...."); *Lee v. Lee*, 767 S.W.2d 373, 375 (Mo.App.1989) ("A custodial parent's allowing children to stay for an extended time with the non-custodial parent and the children's desire to stay with the non-custodial parent constitutes a significant change of circumstances that can support a modification of a prior custody decree.").

We do not mean to suggest that custody should automatically be changed to Mrs. Baumgart just because she has had actual

custody of the children over the preceding three and one-half years. The court must look at the other statutory factors, such as the fitness of the parties' homes, which party will allow meaningful contact, physical or other abuse, and so forth. In addition, of course, it is relevant that custody has been in the mother in large part because of the orders of the court.

### D. Allegations of Abuse and Appointment of Guardian

■ Little evidence was adduced on the record as to any of the other factors made relevant by statute or case law, except on the issue of abuse. As discussed below, that evidence was incomplete. Yet, the little evidence which was available raised serious, as yet unresolved, questions about Mr. Baumgart's fitness to have custody of his children.

As discussed above, the mother's reason for seeking a change of custody was concern that Kristina may have been subjected to sexual abuse by her father while living with him in Indiana. To support her allegation that such abuse occurred, Mrs. Baumgart presented certain documents regarding the Indiana proceedings, the testimony of the grandmother, and the testimony of Dr. Brophy. Counsel for father presented no contrary evidence, but his cross-examination of Dr. Brophy brought out the fact that Dr. Brophy had spent very little time with Kristina and that he had not very thoroughly considered the possibility that, if abuse occurred, it was by someone other than Mr. Baumgart.

Certainly, it was up to the trial judge to determine whether he believed Dr. Brophy and how much weight to give to the doctor's testimony. Because neither of the parties requested findings, we do not know how he resolved these issues in reaching his ultimate determination. We do know from the judge's comments at the October 1993 hearing and his *pendente lite* order thereafter, that the judge found Dr. Brophy's testimony

sufficiently disturbing that he granted Mr. Baumgart only supervised visitation for the next two and one-half years. Yet, he did not find it sufficiently complete that he was initially willing to permanently modify custody based on that testimony. Instead, he asked for additional information from Indiana.

While the record evidence provided from Indiana did confirm that an abuse investigation occurred, it in no way explained why the investigation had terminated. It could have been because it was not substantiated, or it could have been because the children were no longer in the jurisdiction and were in Mrs. Baumgart's custody.

This lack of an adequate record appears to be in part the result of a failure by the parties to offer complete evidence, at least on the record, as to what occurred in the Indiana investigation. Incomplete investigation of abuse allegations would not support simply leaving custody where it was initially, however, for we are dealing here with the best interests of the children, and any custody order must be structured with that goal in mind.[3]

■ Indeed, we note that it is to ensure that the court has sufficient information to see that the child's interests are protected in just this kind of situation that Section 452.423.1 requires appointment of a guardian ad litem in any proceeding in which child abuse or neglect is pleaded. § 452.423.1, RSMo 1994. As noted, one was appointed here in light of the serious allegations of sexual abuse. The duty of a guardian ad litem is to protect the best interests of the children. *Guier,* 918 S.W.2d 940; *Wilkinson v. DeClue,* 890 S.W.2d 774 (Mo.App.1995).

The guardian ad litem is the legal representative of the children at the hearing and has specific statutory duties to fulfill. The guardian ad litem may subpoena witnesses, offer testimony, and examine witnesses. § 452.423.2(1). The guardian ad litem also

---

**3.** Of course, we have no way of knowing whether the court and parties were informally made aware of other information relevant to this issue which formed the basis of the court's later determination to leave custody in Mr. Baumgart. In the absence of such evidence in the record, and without findings showing us the basis for the court's decision, we can only review the court's decision in light of the information which the record shows was available to the trial judge, however.

has a *duty* to conduct all necessary interviews with people having knowledge or contact with the child, and he may interview the child if appropriate. § 452.423.2(2).

If the guardian ad litem believes the child is being abused, he has an additional duty to request that the juvenile officer file a petition. § 452.423.2(3). While he is not required to make an explicit recommendation as to child custody, the statutes and cases are clear that it is "imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest and this be presented to the trial judge," *see In re Interest of J.L.H.*, 647 S.W.2d 852, 861 (Mo.App.1983), and he must be active in determining the best interests of the children. *Guier*, 918 S.W.2d at 952. We recognize that some counties do not provide funding to adequately compensate a guardian ad litem for his or her services, but we note that Section 452.423.4 provides that the court may in its discretion order a reasonable fee to be paid the guardian ad litem by one or both parties.[4]

In this case, there is nothing in the record to indicate that the guardian ad litem conducted any investigation or interviews with people having contact with Kristina or took any role at all outside the hearing in determining the best interests of the children, as required by statute.

Although the guardian did ask a few minor questions in cross-examination of the psychologist who testified at the hearing, he did not examine or cross-examine any of the other witnesses, including Mrs. Baumgart, who was requesting primary physical custody of the children. Mr. Baumgart did not testify at the hearing, and there is no indication the guardian spoke with him. The guardian also did not present any of his own witnesses or evidence, nor did he make a recommendation regarding custody at the hearing's conclusion. He did not ask the juvenile officer to investigate the allegations of abuse. Indeed, it appears he may not have even been aware of the current status or custody arrangements as to the children, for at the end of the April 28, 1995, hearing the following exchange occurred between the guardian and the court:

> The Court: Do you wish to make recommendations?
>
> [Guardian]: No. I have no specific recommendation as to the issues that are pleaded. I'm—I'm troubled a little bit by the fact that there—all the time that's elapsed in this case, and I'm not really sure what the present situation is, like who's had—

These evident failures by the guardian contributed to the lack of complete information on which the trial court could base its decision. In any event, the judge is required to ensure that the guardian ad litem discharges his duties. § 452.423.3. The failure of the guardian to do so here deprived the court of independent evidence which would help him assess the validity of the charges of abuse and the appropriateness of returning custody to the father. It (as well as delays occasioned by the parties themselves) may also have been the cause of the undue delay by the court in resolving the custody issue and may be what led the court not to address the abuse allegations. Where, as here, the best interests of the child are at issue, however, such delay should not be permitted.

## IV. REMAND

The inordinate delay in ruling, and the staleness and incompleteness of the information available to the court, are relevant factors for this Court to consider in determining whether the decree is in the best interests of

---

4. At the time of the trial of this case, the statute stated:

> The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings, or may tax such fees as costs to be paid by the party against whom costs are taxed, or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. . . .

§ 452.423.4. Effective July 1, 1997, the court will no longer be able to tax these fees as costs, but they may still be awarded as a judgment to be paid by any party or may be ordered to be paid from public funds.

the children.[5] Because of all of these concerns, we do not believe that the evidence was sufficient to support a change of circumstances which would have justified leaving custody in Mr. Baumgart, nor do we believe the evidence was sufficient to permit a determination as to whether abuse occurred or if so by whom.

Accordingly, we reverse and remand the case for appointment of a new guardian ad litem, an immediate investigation of the allegations of the Petition, and of the post-ruling allegations that Mr. Baumgart's home is unfit for habitation by the children, and the holding of a new hearing, followed by a prompt resolution of the custody issue.

All concur.

---

**5.** *See e.g., J.L.S. v. D.K.S.,* 943 S.W.2d 766 (Mo.App.1997) (passage of twenty months since entry of the decree required trial court to determine mental and emotional status of parents and children on remand to determine what was in children's best interest); *Adams v. Adams,* 812 S.W.2d 951, 958 (Mo.App.1991) (difficulty in "finally disposing of the case is exacerbated by the inordinate delay in presenting the issue of custody to this Court"). *Cf. Price v. Price,* 921 S.W.2d 668, 675 (Mo.App.1996) (value of property at time of division, not at time of hearing, must be considered by trial court in issuing dissolution decree).