Lorrie Lou PORTWOOD–HURT, Respondent,

v.

John Thomas HURT, Appellant.

No. WD 54792.

Missouri Court of Appeals, Western District.

March 31, 1999.

Party acting pro se.

David A. Masters, Macon, for Appellant.

Before RIEDERER, P.J.,
LOWENSTEIN and ULRICH, JJ.

RIEDERER, Judge.

John Thomas Hurt, appeals from the trial court's judgment in a dissolution of marriage proceeding. Appellant claims the court erred by refusing him a continuance and by allowing him only supervised visitation with his daughter. Appellant also claims the guardian ad litem assigned to the case failed to perform an independent investigation. The judgment is affirmed in part and reversed and remanded in part.

### Procedural and Factual History

Appellant, John Thomas Hurt and Respondent, Lorrie Lou Portwood–Hurt, were married in Boone County, Missouri, on October 14, 1989. There was one child born of the marriage, Azure Virginia Hurt, born on July 19, 1991. On or about June 6, 1994, the couple separated. On June 13, 1994, Respondent filed a petition for dissolution of marriage. Paragraph 10 of the petition requested that Appellant be awarded only supervised visitation of the child. Respondent's petition alleged several reasons why unsupervised visitation would endanger the child's physical health and impair her emotional development. On July 1, 1994, Appellant filed an answer and cross-petition for dissolution and requested custody of the child subject to visitation by Respondent.

On September 16, 1994, a hearing was held regarding Appellant's and Respondent's motions for an Order Pendente Lite. After a recess, the parties announced they had agreed to a stipulation regarding the pending motions. The trial court heard the stipulation, and agreed that it would be in the best interest of the parties' child, and issued an Order Pendente Lite. The court ordered that: (1) primary care, custody and control of the minor child would be placed with Respondent; (2) Appellant would receive supervised visitation with the child on Thursdays for eight hours, supervised by Barbara Wells; (3) Appellant and Respondent were to submit to a drug screen test immediately following the hearing; (4) Appellant and Respondent were to submit to a psychiatric and medical examination to determine whether either party suffered from a mental disease or defect, anger control problems, or substance abuse problems; (5) Appellant was to pay $379.00 per month in child support.

Appellant and Respondent submitted to a drug screen test immediately following the hearing. Appellant's drug screen report stated that, "[t]his specimen had a specific gravity which is less than the lower limit of normal urine. This determination suggests adulteration during the collection process or an abnormal fluid intake. The specimen is unsuitable for testing." Appellant did not submit another urine specimen. The Order also required Appellant and Respondent to submit to a psychiatric and physical exam to determine whether either party suffered from a mental disease or defect, anger control problems or substance abuse. A blood test was required by the doctor performing the physical exam to detect substance abuse. Appellant supplied only a urine sample. The test results for the urine test were negative for drugs.

Appellant submitted to a psychiatric examination on November 14, 1994. Dr. Z.A. Ajans, M.D.,[a] noted in his evaluation that approximately twelve years prior, Appellant was treated for depression. Ten years prior, Appellant saw Dr. James Shapiro, a psychiatrist, for sleeplessness and mood swings. Dr. James Shapiro diagnosed Appellant with a bipolar disorder. Appellant also saw another psychiatrist, Dr. Keith Pattison for anxiety and depression. Appellant has been in counseling for the past three to four years for anxiety and depression. Appellant admitted to Dr. Ajans that he has a past history of marijuana and methamphetamine

abuse. However, Appellant denied any further drug abuse as of June 1994. Dr. Ajans determined that Appellant had adjustment disorder with mixed emotional features, marijuana and methamphetamine abuse by history, and that he had psycho-social stressors related to the separation from his wife.

On September 15, 1995, Appellant's attorney filed a motion to withdraw, stating that he had irreconcilable differences with Appellant and that after contacting Appellant on numerous occasions informing him that he needed to finish answering interrogatories, Appellant failed to cooperate. On September 27, 1995, counsel's motion to withdraw was sustained. On November 27, 1995, a letter was sent by the clerk's office advising the parties that the case was placed on the dismissal docket, and that the cause was subject to dismissal without prejudice for failure of prosecution, unless application was made to the court before the expiration of thirty days. On December 26, 1995, Appellant filed a letter with the clerk's office requesting that the case not be dismissed and informed the court that he was without an attorney and was attempting to find a replacement. On December 29, 1995, the clerk's office sent Appellant a letter stating that Judge Belt had continued Appellant's case until January 30, 1996, giving him time to obtain counsel.

On September 17, 1996, the court ordered Appellant and Respondent to appear on October 11, 1996, to define the issues in controversy and to set the case for trial. On October 11, 1996, by stipulation, the court met in Macon, Missouri. Respondent appeared in person with her attorney and Appellant appeared *pro se*. The parties agreed to negotiate and the court continued the matter until October 23, 1996. On October 23, 1996, Respondent appeared in person with her attorney and Appellant appeared *pro se*. The case was set for trial on April 14, 1997.

On April 4, 1997, Appellant sent Judge Belt a letter requesting a continuance. Appellant stated that he had sought the advice of an attorney and that she was willing to take his case if a continuance could be obtained. On April 7, 1997, the trial court denied Appellant's application for a continuance.

On April 15, 1997 the trial began. At the beginning of the trial, prior to any witnesses being called, Appellant orally requested a continuance to secure legal representation. The court denied the application for continuance.

The evidence adduced at trial showed that Appellant uses and sells methamphetamine. Beverly Little testified that she dated Appellant from March 1995 until October of 1995. She testified that Appellant used methamphetamine regularly, that he gave her methamphetamine, and that Appellant had used methamphetamine prior to supervised visits with his child. Lisa Feldman, Respondent's sister, testified that during the summer of 1996, Appellant used methamphetamine and that when she went to his house for the first time to get methamphetamine, he made her remove her clothes to be sure she was not wired, and recording their conversations. Tereca Megee, a friend of Appellant's testified that she had witnessed Appellant sell methamphetamine on many occasions. Donald Megee, also a friend of Appellant's, testified that he also was present on several occasions when Appellant sold methamphetamine.

Evidence at the trial also showed that Appellant has a violent temper. Beverly Little testified that Appellant, "loses control very easily," and has a bad temper. Barbara Wells, who had supervised over a hundred visits between Appellant and the child, testified that since October of 1996, she observed extreme mood swings in Appellant. She also testified that most of his anger was directed towards Respondent. Donald Megee testified that Appellant would become angry and violent when he ran out of methamphetamine.

Evidence at the trial also showed that Appellant was abusive to Respondent. Alicia Cox, a babysitter for the child, testified that she observed Appellant shake Respondent by her hair while she was holding the child. Respondent testified that Appellant has banged his forehead against hers; knocked her down injuring her shoulder and knee; grabbed her by her throat, shoved her in a closet and repeatedly kicked her; pulled her

hair, slapped her, bit her, and strangled her. Respondent also testified that Appellant verbally abused her, often calling her derogatory terms. Respondent further testified that Appellant had intentionally hit the child when she was approximately a year and a half old because she was annoying him, and that he unintentionally hit the child when he had shoved and hit Respondent while the child was in her arms.

Evidence was also offered at trial concerning Appellant's violent behavior towards other women. Tereca Megee testified that she observed Appellant's violent mood swings, and was present when Appellant grabbed his former girlfriend, Veda Schultz, by the throat, threw her to the ground and bit her, in front of Veda's child. Beverly Little testified that Appellant had smacked her five-year-old child on top of the head one morning at breakfast; that Appellant had thrown a knife at her during an argument; and that during another altercation he had followed her out to her car and, while she was holding her child, dragged her through gravel.

Evidence from the trial also showed that the child preferred supervised visitation with Appellant. Barbara Wells testified that the child had expressed to her that she did not want to see Appellant by herself and that the child told her Appellant had a temper. Ms. Wells further stated that on several occasions, Appellant would stay in his room most of the day and/or nap during his visitation time with the child. Tereca Megee testified that the child has told her on occasion that she did not want to go to Appellant's house. The child said that, "[i]t's not a happy house." Ms. Megee also testified that the child has exhibited fear in being around Appellant. Lonny Morrow, a psychologist who evaluated the child, testified that while the child wishes to continue visits with Appellant, the child is concerned about his temper and clearly wants her visitation to be supervised.

On July 15, 1997, the trial court issued its judgment. The trial court found it was in the best interests of the parties' child to be placed in the legal and physical custody of Respondent and that it was in the best interests of the parties' child that Appellant's visitation be supervised by a third party. This appeal ensued.

## I. Continuance

Appellant claims in his first point that the trial court erred and abused its discretion in failing to grant him a continuance.

### A. Standard of Review

■ Generally, the grant or denial of a continuance is within the discretion of the trial court. *Mills v. Mills,* 939 S.W.2d 72, 74 (Mo.App.1997). "The denial of a continuance rarely constitutes reversible error, although the trial court does not have absolute or arbitrary discretion." *Lohmann v. Norfolk & Western Railway Co.,* 948 S.W.2d 659, 672 (Mo.App.1997). The decision of the trial court will not be reversed unless the trial court abused its discretion. *Mills,* 939 S.W.2d at 74. "Only in extreme cases where it clearly appears that the moving party . . . is free of any dereliction," will an appellate court find an abuse of discretion in denying a motion for continuance. *Harris v. Desisto,* 932 S.W.2d 435, 439 (Mo.App.1996). The circumstances of each case must be considered in reviewing the exercise of discretion of the trial court. *Pioneer Advertising Co., Inc. v. Ringleader Restaurants, Inc.,* 886 S.W.2d 651, 652 (Mo.App.1994).

### B. Trial Court Did Not Abuse its Discretion in Denying Continuance

■ In this case, Appellant's attorney's motion to withdraw was sustained on September 27, 1995. On November 27, 1995, a letter was sent to Appellant by the clerk's office advising him that the case was placed on the dismissal docket. On December 26, 1995, Appellant filed a letter with the clerk's office requesting that the case not be dismissed and informed the court that he was without an attorney and was attempting to find a replacement. The trial court continued Appellant's case until January 30, 1996, giving him time to obtain counsel. Approximately nine months later, on September 17, 1996, the court ordered Appellant and Respondent to appear on October 11, 1996, to define the issues in controversy and to set

the case for trial. Appellant appeared *pro se*. The parties agreed to negotiate and the court continued the matter until October 23, 1996. On October 23, 1996, Appellant appeared *pro se*. The case was then set for trial on April 14, 1997. On April 4, 1997, Appellant sent Judge Belt a letter requesting a continuance which was denied. On April 15, 1997, at the beginning of the trial, prior to any witnesses being called, Appellant orally requested a continuance to secure adequate legal representation, which was denied.

■ Rule 65.03 specifies the proper procedure for seeking a continuance and states in pertinent part: "An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the fact upon which the application is based, unless the adverse party consents that the application for continuance be made orally." Absent compliance with Rule 65.03, there can be no abuse of discretion in denying a continuance. *Lamastus v. Lamastus*, 886 S.W.2d 721, 726 (Mo.App.1994). Here, Judge Belt granted Appellant's first application for a continuance to obtain counsel even though his request did not comply with Rule 65.03. However, on April 4, 1997, Appellant made another written application for a continuance which was denied. It was not accompanied by an affidavit as required by Rule 65.03. The third time Appellant applied for a continuance was at the beginning of the trial on April 15, 1997. Appellant orally requested a continuance to obtain legal representation, which was again denied. Appellant's oral request for a continuance did not comply with Rule 65.03. It was not in writing, not accompanied by an affidavit and Respondent did not consent to the application being made orally. "Although the noncompliance with Rule 65.03 is sufficient by itself to uphold the trial court's denial of a continuance, other factors support the trial court's decision." *Mills*, 939 S.W.2d at 75. *Pro se* litigants are held to the same standard as licensed attorneys. *Mills*, 939 S.W.2d at 74. They are entitled to no indulgence they would not have received if represented by counsel. *Lamastus*, 886 S.W.2d at 726. In *Mills*, the wife was a *pro se* litigant that applied for a continuance which was denied due to noncompli-

ance with Rule 65.03. 939 S.W.2d at 75. In that case, this court found that the six weeks the wife had to retain counsel from the date of her former attorney's withdrawal to the date of trial was adequate. *Id.* Here, Appellant had been given approximately sixteen months to obtain counsel from the time he was granted his first application for a continuance. The trial court did not abuse its discretion in denying Appellant's application for a continuance. Appellant had more than ample time to retain an attorney. Point I is denied.

## II. The Trial Court Did Not Err In Following The Guardian Ad Litem's Report and Recommendation

■ Appellant claims in his second point that the trial court erred in accepting and adopting the guardian ad litem's ("GAL") report and recommendations regarding supervised visitation and in failing to *sua sponte*, upon receiving the report, vacate the submission and in not requiring the GAL to conduct further investigation regarding Appellant and Respondent's drug use, the psychological well being of the child, and then ordering a new trial. Appellant appears to argue that the trial court did not perform its statutory duty under § 452.423.3, requiring the court to monitor the guardian ad litem's discharge of her duties.

### A. Standard of Review

■ The decision of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *In re Marriage of Powell*, 948 S.W.2d 153, 156 (Mo.App.1997). Determinations of the trial court are given greater deference in child custody matters than in other cases. *Id.* The judgment must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect. *Baumgart v. Baumgart*, 944 S.W.2d 572, 575 (Mo.App. 1997). A trial court's custody determination is presumed to have been done in the best

interests of the child. *Senciboy v. Thorpe*, 947 S.W.2d 116, 119 (Mo.App.1997).

## B. Discussion

 Section 452.423.2 states in pertinent part that a guardian ad litem shall:

(1) Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed;

Under this section, it is the duty of the guardian ad litem to protect the best interests of the child. *McCreary v. McCreary*, 954 S.W.2d 433, 448 (Mo.App.1997). "As their representative, the guardian ad litem is to stand in the shoes of the children and weigh the factors as they would weigh them if their judgment was mature." *Id.* (citing, *Guier v. Guier*, 918 S.W.2d 940, 950 (Mo.App. 1996)).

First, Appellant contends that the GAL's report was made without any independent investigation regarding current drug use by either party, and that the evidence it did contain regarding drug use was not credible and was biased. The GAL's report stated in pertinent part:

The evidence has shown a history of drug abuse on the part of both Petitioner and Respondent. The testimony and the results of the drug tests entered into evidence show that Petitioner is not presently using illegal drugs and hasn't since the time of the parties' separation in 1994. There was no testing admitted into evidence to show that Appellant is at this time drug free. There was credible evidence presented regarding Appellant's history of drug abuse and violent behavior directed at [Respondent] as well as other people.

 Even though the court is not bound by the opinion or recommendation of the GAL, "it is imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest and this be presented to the trial judge." *In Interest of J.L.H.*, 647 S.W.2d 852, 860–61 (Mo.App.1983). The trial court may accept, modify or reject the guardian's recommendations as it sees fit. *In re Marriage of Sisk*, 937 S.W.2d 727, 733 (Mo.App.1996). Here, the GAL's report was based on an interview with the child and evidence presented at the hearing, including the results of drug tests. On September 16, 1994, the trial court issued an Order Pendente Lite, which ordered Appellant and Respondent to submit to a drug screen test immediately following the hearing that day. Appellant's drug screen report stated that the urine sample had either been adulterated or Appellant had an abnormal fluid intake. In either case, the sample was not testable.

The Order Pendente Lite also required Appellant and Respondent to submit to a psychiatric and physical exam to determine whether either party suffers from a mental disease or defect, anger control problems or substance abuse. A blood test was required by the doctor performing the physical exam to detect substance abuse, however, Appellant only supplied a urine sample. The test results were negative for drugs. Appellant had admitted in his psychiatric evaluation that he had used drugs.

The GAL also cross-examined Appellant regarding his drug use. Appellant testified that he had used methamphetamine in the past. The GAL also had the opportunity to hear witnesses testify about Appellant's drug use and drug selling. Beverly Little dated Appellant from March 1995 until October of 1995. She testified that Appellant used methamphetamine regularly, that he gave her methamphetamine, and that Appellant had used methamphetamine prior to supervised visits with his child. Lisa Feldman, Respondent's sister testified that during the summer of 1996, Appellant used methamphetamine and that when she went to his house for the first time to get methamphetamine, he made her remove her clothes to be sure she was not wired and recording their conversations. Tereca Megee, a friend of Appellant's, testified that she had witnessed Appellant sell methamphetamine on many

occasions. Donald Megee, also a friend of Appellant's, testified that he was also present on several occasions when Appellant sold methamphetamine. The trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears. *Guier*, 918 S.W.2d at 946. The GAL's report concerning Appellant's drug use was based on substantial evidence.

�justify With regard to the GAL's interview of the child, Appellant claims that he was deprived of his right to cross-examine the child, since the child was not called as a witness or interviewed in chambers by the court. Section 452.423.2(2) provides that prior to a hearing, a GAL should interview the child, if appropriate. The GAL is under no duty to call the child as a witness at the hearing or to have the child interviewed by the judge in chambers. Section 452.385 authorizes the court to conduct an in-chambers interview with the child. However, an interview with the child is not mandatory, and Appellant did not request that the child be interviewed by the court. Thus, he cannot complain. *Vaught v. Vaught*, 755 S.W.2d 375, 377 (Mo.App.1988). Furthermore, Appellant was free to call the child as a witness. "A parent has a right to call upon his children, if competent, to testify in a child custody proceeding where such evidence is relevant." *R.S. v. J.D. M.*, 542 S.W.2d 361, 362 (Mo.App.1976).

 Appellant also argues that the GAL did not do an independent home study or perform an independent neutral psychological investigation of the child. In regard to the home study, § 452.390 provides that "[t]he court may order an investigation and report concerning custodial arrangements for the child." However, this section is not mandatory. *O.J.G. v. G.W.G.*, 770 S.W.2d 372, 376 (Mo.App.1989). Further, Appellant did not request a home study, nor was it the duty of the GAL to request that the court conduct a home study. The GAL also had no duty to request an independent psychological evaluation of the child. Appellant could have had a psychological evaluation of the child done if he so desired.

Finally, Appellant claims the GAL's performance in this case was equally poor, if not worse than that described in *In Interest of J.L.H.*, 647 S.W.2d 852 and *Baumgart v. Baumgart*, 944 S.W.2d 572 (Mo.App.1997). In *J.L.H.*, the child's natural parents were both killed and two different parties sought to adopt the child. The court in that case determined that the guardian ad litem had failed to contribute any information to help in the determination as to what was in the best interests of the child. Specifically, the court was disturbed by the fact that the GAL did not cross-examine either party attempting to adopt the child and that the GAL did not present an informed decision on the psychological effect on the child if his home, city, custodians, and culture changed, if custody was granted to his grandmother. *J.L.H.*, 647 S.W.2d at 861.

In *Baumgart*, wife sought primary physical custody of her two daughters because of alleged sexual abuse of one of the children by father. The GAL in *Baumgart* asked only a few minor questions in cross-examination of a psychologist. The GAL did not cross-examine any other witnesses, make a recommendation, or investigate the allegations of abuse. 944 S.W.2d at 579. Here, the GAL cross-examined both Appellant and Respondent, as well as other witnesses, interviewed the child and issued a report. It cannot be said that the GAL did not contribute information to assist the court in its determination in this matter.

The GAL in this case adequately performed her statutory duties. Point II is denied.

### III.

Appellant claims in his third point that the trial court erred in failing to provide findings of fact and conclusions of law explaining why it imposed supervised visitation because (A) Appellant was appearing *pro se* and therefore was unfamiliar with Rule 73.01(A)(3); (B) Section 452.400.2 requires proof of "treatment and rehabilitation" neither of which is defined in the statute, and (C) it had a duty to do so under § 452.375.12;

### A. Rule 73.01(A)(3)

 Appellant acknowledges that Rule 73.01(A)(3) requires a party to request findings of fact. Otherwise, the court is not required to make findings of fact, and the facts are presumed to be found in accordance with the trial court's judgment. *Lawson v. Traders Insurance,* 946 S.W.2d 298, 300 (Mo. App.1997). Appellant claims he was appearing *pro se* and was unfamiliar with this rule. He cites no authority indicating that this fact would require the trial judge to enter findings of fact, and we are unaware of any such authority. The lay person appearing *pro se* is held to the same standard as an attorney. *Mills,* 939 S.W.2d at 74. This argument is without merit.

### B. Section 452.400.1

 Appellant also sets forth arguments concerning issues Appellant relates to § 452.400.2, which are not readily discernible by this court. However, § 452.400.2 pertains to the modification of visitation arrangements. In this case, we are concerned with the original grant of visitation rights to a noncustodial parent, which is governed by § 452.400.1. *J.L.S. v. D.K.S.,* 943 S.W.2d 766, 772 (Mo.App.1997). Section 452.400.1 states in pertinent part: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development...." Here, the court did not make such a finding. In this respect, the trial court stated: "11. With regard to [Appellant's] visitation, the Court finds that it is in the best interests of the parties' minor child that [Appellant's] visitation be supervised by a third party." This finding, along with substantial evidence in the record could support a finding that "visitation would endanger the child's physical health or impair her emotional development." In some cases, this court has held that a finding of impairment of emotional development is implicit from the trial court's order denying visitation. *Van Pelt v. Van Pelt,* 824 S.W.2d 135, 137 (Mo.App.1992); *Parker v. Parker,* 918 S.W.2d 299, 300 (Mo.App.1996). We do not find that the evidence in this case is so substantial that the findings required by § 452.400.1 are implicit in the judgment of the trial court. Since the judgment lacks the findings required by § 452.400.1, we reverse only that part of the judgment relating to restricted visitation and remand to the trial court for a determination of whether findings required by that statute are appropriate on this record.

### C. Section 452.375.12

Finally, Appellant claims that the trial court had a duty pursuant to § 452.375.11 to make specific findings of fact since there were allegations of domestic abuse. We presume Appellant is actually referring to § 452.375.12 [1] which states:

> If the court finds that domestic violence has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm.

In this case, the trial court did not make any specific findings as to domestic abuse. Paragraph 10 of the court's judgment stated:

> The court finds that it is in the best interests of the parties' minor child, Azure Virginia Hurt, to be placed in the general care, custody and control of [Respondent], with regard to both legal and physical custody. In regard to the statutory relevant factors enumerated in Section 452.375.2 17VAMS, the Court finds those factors enumerated in Subsections (1) to (6) favor [Respondent] and those in Subsections (7) and (8) are neutral.

We need not separately address this issue, since it is unlikely to arise again following remand in light of the fact that, on remand, the court will be required to make findings of fact on the issue of whether supervised or unsupervised visitation would endanger the child's health or impair her emotional development. As a part of these findings, it would be appropriate for the court to state whether

---

1. A 1995 amendment renumbered § 452.375.11 to § 452.375.12.

it finds that domestic violence occurred and, if so, how the visitation arrangements it makes on remand best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm, and we direct it to do so.

The judgment of the trial court is affirmed in part and reversed and remanded in part.

All concur.