Teresa Lynn ALLEN, Appellant,

v.

Bobby Joe ALLEN, Jr., Respondent.

No. SD 30394.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 2011.

Daniel D. Whitworth, Whitworth, McPherson & Longnecker, LLC, Joplin, for Appellant.

Richard D. Bender, Springfield, MO, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Teresa Lynn Allen ("Mother") appeals the judgment of the trial court which granted Respondent Bobby Joe Allen's ("Father") motion to modify a previously entered decree of divorce as it related to the legal and physical custody of their daughter ("Child"). In its judgment, the trial court modified the custody of Child from joint legal custody with Mother "having primary physical custody subject to [Father's] right to reasonable visitation ..." to "[s]ole [l]egal and [p]hysical [c]ustody [with] Father...." [1]

In her single point on appeal, Mother asserts the trial court erred in changing the parties' custody arrangement because the trial court misapplied the law "by not requiring the guardian ad litem to discharge his [statutory] obligations in that he did not conduct a sufficient investigation to ascertain ... Child's wishes, feelings, attachments and attitudes...."

Preliminarily, as best we discern the record, Mother made no objection at trial relating to the performance of the guardian ad litem or the adequacy of his representation of Child's interests although she did raise this issue in her timely motion for new trial. To preserve an issue for appeal to this Court by raising it in her motion for new trial Mother was required to present the issue or objection to the trial court during the trial as opposed to raising it for the first time in the motion. *Stone v. City of Columbia,* 885 S.W.2d 744, 747 (Mo.App.1994). In that Mother clearly asserted this issue for the first time in her motion for new trial, it was not preserved for appellate review on that basis. *Id.* Nevertheless, "[w]e have the discretionary authority ... to review this point for plain error ..." pursuant to Rule 84.13(c) since the best interests of Child are involved. *Murphey,* 207 S.W.3d at 688. In doing so we are mindful that "in civil cases, the plain error doctrine is rarely resorted to, and relief is available ... only in cases of manifest injustice or a miscarriage of justice." *In re S.M.,* 938 S.W.2d 910, 923 (Mo.App.1997).

Viewing the record in the light most favorable to the trial court's judgment, *Hamer v. Nicholas,* 186 S.W.3d 884, 886 (Mo.App.2006), the record reveals the parties' marriage was dissolved on March 13, 2003, and, as already stated, while the parties were granted joint legal custody of Child, Mother was awarded "primary physical custody." On September 10, 2007, Father filed a "Motion to Modify" the parties' custody arrangement based on his allegations that Mother had been denying him visitation with Child. On December 10, 2007, Mother filed her "Answer and Counter Motion to Modify" in which she averred Father often denied her access to Child during Child's visits with Father. The trial court appointed Marc Edmondson ("Mr. Edmondson") as Child's guardian ad litem on December 11, 2008. Mother then filed an "Amended Motion to

---

1. "Section 452.410.1 authorizes modification of a prior custody decree upon a finding by the trial court that 'a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.'" *In Re* *Marriage of Murphey,* 207 S.W.3d 679, 684 (Mo.App.2006) (quoting § 452.410.1).

Unless otherwise stated, all statutory references are to RSMo Cum.Supp.2007, and all rule references are to Missouri Court Rules (2007).

Modify" in July of 2009, in which she maintained that Father "and/or others have sexually abused [Child] while she has been in [Father's] custody" and that the Children's Division of the Department of Family Services ("the Children's Division") was investigating the allegations. On July 17, 2009, the trial court entered an "Order" suspending Father's visitations with Child "until the investigation is concluded and [Father [is absolved of any wrongdoing thereby."

A trial on the parties' competing motions to modify was then held on August 25, 2009. At trial, the various allegations of sexual abuse against Father were discussed by the following witnesses: Brian Martin ("Detective Martin"), an investigator with the Barry County Sheriff's Office, who concluded that he had no concerns about Father's contact with Child and believed Mother may have suggested molestation scenarios to Child; Dawnyelle Robinson, a children's therapist, who believed Child's allegations were false as she premised each disclosure of abuse with the phrase "my mom wanted me to tell you that," and believed Child should be placed primarily in Father's care; Marilyn Noland ("Ms. Noland"), a therapist, who performed an inconclusive forensic interview on Child; Maria Lamb, the executive director of the Preservation House, who supervised several of Mother's visitations with Child and noted Mother often answered for Child during discussions such that she appeared "quite dominant at times exhibiting manipulative and controlling behavior;" Cassie Myer, a forensic interviewer for the Child Advocacy Center, who discussed the disclosures of abuse Child made to her during what was Child's third interview, and who opined that it was unwise to interview children multiple times about abuse as the results from each subsequent interview were more compromised; and Father, who testified that he had not abused Child and that he had been cleared of any wrongdoing by multiple unsubstantiated hotline investigations. Additionally, while Mr. Edmondson did not offer any testimony or evidence at trial, he did cross-examine the majority of the witnesses and filed a written recommendation with the trial court.[2]

On October 27, 2009, the trial court entered its judgment in which it found "a significant change in circumstances" such that modification of Child's custody was appropriate and it awarded "sole legal and physical custody" of Child to Father. Following entry of the judgment, Mother filed a "Motion to Amend Judgment or For New Trial" in which, *inter alia*, she alleged the trial court erred in entering its decision because it "did not have an appropriate or complete recommendation from ..." Mr. Edmondson in that he "did not completely perform his duties in his failure to at least attempt an interview ..." with Child.

A hearing on Mother's motion was held on February 19, 2010. At this hearing,

---

**2.** In his written recommendation, the guardian ad litem made no express suggestion as to "[l]egal [c]ustody" of Child, although he did note "the conflict among the parents" and suggested mediation as an alternative to solving some of the parenting issues he observed; made no proposal as to "[p]hysical [c]ustody" of Child, except that he recounted the parties' competing assertions, but recommended the·trial court award "sole physical custody" of Child to the parent the trial court believed to be the "non-offending parent" or "joint physical custody" to both parents if the trial court found none of the allegations were true; made certain "[o]ther [p]arenting [p]lan" recommendations such as cell phones as an appropriate means of communication; and further recommended that Child "obtain socialization skills" and to that end "have regular contact with children her own age through the public school or other activities."

Mr. Edmondson explained there was an occasion where Child was present in his office and he chose not to interview her because he

> thought it would be more appropriate to rely on the counselors['] interviews and their recommendations, especially ... suggestions that had been made that these allegations were created or the result[ ] of some suggestions by [Mother]. I believe at the time of the trial I did advise the [trial c]ourt that ... [if it] deemed [it] appropriate to interview [Child] that she could be brought ... to the [hearing] and interview[ed]....

Counsel for Father argued that Mr. Edmondson's decision not to interview Child was the correct one, because

> [s]ection 452.423.3[ (2) ], states the guardian ad litem should interview a child only if it's appropriate. I think if the [trial c]ourt will recall the evidence given by two other counselors who were here for the trial was that this child was interviewed too much already, a child should only be interviewed once with regard to these sorts of allegations. By the time that Ms. Noland rolled around in April of '09, that was interview number three [for Child]. The guardian ad litem would have been number four. He simply made a choice as I would have I believe in his shoes as a guardian ad litem and chose[ ] not to speak to [Child] again about these allegations. But relied on the professionals to tell him what the true nature of these allegations [were] rather than putting [Child] through it yet again.

While taking the matter under advisement, the trial court noted at the hearing that "it was sort of overkill on the forensic interviews" such that it had "reach[ed] the point of diminishing returns as far as the interview of [Child], frankly, by anybody."

The trial court then denied Mother's motion. This appeal followed.

 In this court-tried case, appellate review is governed by Rule 84.13(d) and the principles set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Melton v. Collins*, 134 S.W.3d 749, 752 (Mo.App.2004); *Hamer*, 186 S.W.3d at 886. As such, this Court " 'will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law.' " *Melton*, 134 S.W.3d at 752 (quoting *Baxley v. Jarred*, 91 S.W.3d 192, 196 (Mo.App.2002)). "In reviewing the trial court's judgment, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and disregard all evidence and inferences to the contrary." *Hamer*, 186 S.W.3d at 886. This Court gives " 'greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record.' " *Id.* (quoting *In re Marriage of Parmenter*, 81 S.W.3d 234, 242 (Mo.App. 2002)). "The judgment must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect.' " *Id.* (quoting *Wallace v. Chapman*, 64 S.W.3d 853, 858 (Mo.App.2002)). Furthermore, "the trial court's decision in this court-tried case is presumed correct," and Mother, as the appealing party, "bears the burden of showing error." *Murphey*, 207 S.W.3d at 683; *see also Baumgart v. Baumgart*, 944 S.W.2d 572, 575–76 (Mo.App.1997). "We will not reverse the trial court's judgment if there is no showing of prejudice as a result of that judgment.' " *Murphey*, 207

S.W.3d at 683 (quoting *Shields v. Shields,* 59 S.W.3d 658, 660 (Mo.App.2001)).

Section 452.423.3, sets out, in pertinent part, that:

[t]he guardian ad litem shall:

(1) Be the legal representative of the child at the hearing, and *may* examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. *If appropriate,* the child should be interviewed. . . .

(Emphasis added.) It has been held that '[t]he role of the guardian ad litem involves more than perfunctory and shadowy duties. The guardian ad litem is supposed to collect testimony, summon witnesses and jealously guard the rights of infants, which is the standard of duty in this state. It is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if his judgment were mature and he was not of tender years.'

*In re Marriage of Sisk,* 937 S.W.2d 727, 733 (Mo.App.1996) (quoting *In the Interest of J.L.H.,* 647 S.W.2d 852, 861 (Mo.App. 1983)). Additionally,

[w]hile he is not required to make an explicit recommendation as to child custody, the statutes and cases are clear that it is 'imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest and this be presented to the trial judge,' and he must be active in determining the best interests of the children.

*Baumgart,* 944 S.W.2d at 579 (quoting *In the Interest of J.L.H.,* 647 S.W.2d at 861) (internal citation omitted).

Mother urges this matter is akin to the situation in *Baumgart* where the mother appealed the trial court's denial of her motion for change of physical custody of her two minor daughters from the father to herself based on her allegations of paternal abuse. *Id.* at 573–74. In its review, the Western District of this Court noted "there is nothing in the record to indicate that the guardian ad litem conducted any investigation or interviews with people having contact with [the child] or took any role at all outside the hearing in determining the best interests of the children, as required by statute." *Id.* at 579. It further stated that "[a]lthough the guardian did ask a few minor questions in cross-examination of the psychologist who testified at the hearing, he did not examine or cross-examine any of the other witnesses, including [the mother], who was requesting primary physical custody. . . ." *Id.* Further, the reviewing court noted the guardian ad litem failed to interview the father in the matter; "did not present any of his own witnesses or evidence . . .;" did not "make a recommendation regarding custody at the hearing's conclusion;" and "did not ask the juvenile officer to investigate the allegations of abuse." *Id.* The court found that it also appeared the guardian ad litem "may not have even been aware of the current status or custody arrangements . . ." of the child at the time of trial. *Baumgart,* 944 S.W.2d at 579. As such, it determined "[t]hese evident failures by the guardian ad litem contributed to the lack of complete information on which the trial court could base its decision" and these failures "deprived the [trial] court of independent evidence which would help [it] assess the validity of the charges of abuse and the appropriateness of returning custody to the father." *Id.* This issue relating to the failures of the guardian ad litem coupled with "[t]he inordinate delay in ruling, and the staleness

and incompleteness of the information available to the court ..." caused the appellate court to find there was insufficient evidence to support a change of circumstances and it remanded the matter, *inter alia*, for appointment of a new guardian ad litem. *Id.* at 579.

 Based on our review of the record we believe *Baumgart* is factually distinguishable because no similar circumstances are present in the case at bar. *See Murphey*, 207 S.W.3d at 689. Here, while Mr. Edmondson did not call any of his own witnesses at trial, he actively participated in trial by cross-examining almost all of the witnesses and offering argument to the trial court. The record shows he worked over eleven hours on Child's case and reviewed copious documents. Further, he engaged in numerous phone calls with potential witnesses and other persons of interest; frequently spoke with Mother in person and on the telephone; spoke with Father several times in person and via telephone; talked with Detective Martin, Ms. Noland, and Child's grandfather on numerous occasions; and discussed issues with the Children's Division.

Additionally, Mr. Edmondson explained he made a deliberate choice not to interview Child as he felt it would be detrimental to Child's best interests especially given the fact she had already been interviewed by three professionals on the issue of her alleged abuse by Father. Under these circumstances, we cannot say that section 452.423.3 required Mr. Edmondson to interview Child, to "ascertain ... Child's wishes, feelings, attachments and attitudes ..." as urged by Mother. Furthermore, we note that Mr. Edmondson entered a written recommendation to the trial court, which while it did not conclusively make an express recommendation as to legal and/or physical custody, it did contribute information to the trial court which we determine aided the trial court in assessing the validity of the charge of abuse made by Mother and the appropriateness of changing legal and physical custody in favor of Father. Based on the record before us, we cannot reach the conclusion that the guardian ad litem's actions or inactions resulted in a manifest injustice or a miscarriage of justice. We decline to exercise our discretion to engage in plain error review. *See Murphey*, 207 S.W.3d at 689. Mother's point is denied.

The judgment and order of the trial court is affirmed.

LYNCH and BURRELL, JJ., concur.