**Joanne Yvette PILGER, Respondent,**

v.

**Robert Theodore PILGER, Appellant.**

**No. 21854.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 14, 1998.

Application for Transfer Denied
Aug. 25, 1998.

David R. Mercer, Springfield, for appellant.

J. Kaye Irwin, David Shuler, Springfield, guardian ad litem, for respondent.

PARRISH, Presiding Judge.

Robert Theodore Pilger (father) appeals the judgment in an action for dissolution of his marriage to Joanne Yvette Pilger (mother). This court affirms the judgment in part, reverses it in part and remands.

The parties were married February 13, 1986. They have two children. The trial court dissolved the marriage and awarded custody of the children to mother. It granted father visitation rights "under such supervision and conditions as the mother determines that the children will be safe." Father raises three points on appeal. He contends the trial court erred in denying requests he made for continuance; that the trial court erred in imposing unenforceably vague restraints on his visitations with the children; and that the trial court erred in permitting the testimony of a psychologist who treated him as a patient. Relative facts are included in the discussion of father's points.

This case was set for trial May 30, 1997. Father's attorney filed a motion for continuance May 23, 1997. Father filed a further *pro se* motion for continuance the day of trial. The basis for the motion filed by father's attorney was that comprehensive psychological evaluations of the parties and the children had not been completed. The *pro se* motion likewise asserted that psychological evaluations of the parties and the children needed to be completed and a psychological report obtained.

The trial court denied the motions for continuance explaining that lengthy delays had occurred since the case was filed. The trial judge advised the parties that if during the course of the trial he determined it was necessary or desirable for there to be "either [psychological] reports and/or testimony by a professional," the court would continue the case at that time for that purpose. The trial judge suggested that if the case were continued, it would be no closer to being resolved in 60 days than if the case went to trial as scheduled.

■ "The granting or denial of a continuance is a matter within the sound discretion of the trial court." *Lakepoint Condominium 2 Owners Ass'n. v. Durian*, 906 S.W.2d 396, 399 (Mo.App.1995). "Whether in a given case there is sufficient reason to grant a continuance is to be determined by the trial court." *Inloes v. Inloes*, 567 S.W.2d 732, 734–35 (Mo.App.1978). This court finds no abuse of discretion by the trial court's denial of the motions for continuance under the circumstances of this case. Point I is denied.

Point II is directed to father's visitation rights with the children. The trial court limited father to "reasonable supervised visitation." The judgment provides as to child custody and visitation:

The Court further finds that two (2) children were born to the marriage, Sierra Noelle Pilger, birth date 12–27–86 and Candace Michelle Pilger, birth date 11–28–89. The Court orders that care, custody and control of said minor children be placed with [mother] subject to reasonable supervised visitation by [father].... The Court orders father's visitation be under such supervision and conditions as the mother determines that the children will be safe. Supervised visitation shall continue until father obtains counseling which results in the mother determining that the children will be safe, or the father present [sic] such information to the Court, that it can determine that the children will be safe.

Father contends "(A) said order is so vague as to be unenforceable; and (B) said order places sole discretion with [mother] to arbitrarily determine visitation rights."

Section 452.400.1[1] provides:

A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development. The court shall define the noncustodial parent's visitation periods in detail at the request of either party.

---

1. References to statutes are to RSMo Supp.1995    unless stated otherwise.

Father's brief complains that the trial court did not define his visitation periods in detail. He argues that the trial court was required to define periods of time in which he would be permitted to visit with the children because he filed a *pro se* motion with the trial court May 30, 1997, entitled "Motion to Reconsider Visitation."[2] It requested that "the Circuit Court of Christian County, Missouri, ... issue an immediate Order granting [father] fair, reasonable and regularly scheduled visitation with his two minor children."

Trial was held May 30, 1997, the same day father's *pro se* "Motion to Reconsider Visitation" was filed. The trial court took the case under advisement at the close of the evidence. The record does not reflect that father's motion was brought to the attention of the trial court then or at any other time. Judgment was entered June 6, 1997.

Father's claim that his "Motion to Reconsider Visitation" suffices as a request to define visitation as prescribed by § 452.400.1 is questionable. The motion requested the trial court to reconsider an earlier request for temporary visitation that had been denied. Regardless, the claim of error in Point II is that the part of the judgment that awarded visitation rights "is so vague as to be unenforceable." It goes to the text of the judgment, not to the question of whether father requested the trial court to specify detailed visitation periods. "Questions for decision on appeal are those stated in points relied on.

A question not presented in that manner is not an issue for appellate review." *State v. Pagano*, 882 S.W.2d 326, 335 (Mo.App.1994).

■ The evidence was sufficient for the trial court to conclude that unrestricted visitations by father could endanger the children's physical health and mental development and to warrant imposition of restrictions on his visitations.[3] The determination that unrestricted visitations would endanger the children is implicit in the judgment's recitations. *See Van Pelt v. Van Pelt*, 824 S.W.2d 135, 137 (Mo.App. 1992); *Flaton v. Flaton*, 777 S.W.2d 948, 951 (Mo.App.1989).

■ Nevertheless, father's complaint that the judgment is vague and unenforceable with respect to what conditions are required for him to exercise visitation is well taken. The condition that visitation be "under such supervision and conditions as the mother determines that the children will be safe" does not define circumstances for his visits. The attempted restrictions are indefinite. "Provisions in a judgment should be definite and indefinite provisions are void and unenforceable." *In re Marriage of Brooke*, 773 S.W.2d 496, 499 (Mo.App.1989). The case must be remanded for the trial court to establish and prescribe with definiteness conditions and circumstances that will be required for father to exercise reasonable visitation. Those conditions and circumstances shall assure that

**2.** Father was represented by counsel when this case was set for trial. On the morning of trial, the attorney who had been representing father had a pending motion to withdraw from the case and father had a pending *pro se* motion to dismiss the attorney. The trial court granted both motions, but by docket entry ordered the attorney "to remain in court room available to [father] to give [father] any advice or answer any questions he may have...."

**3.** There was evidence at trial of spousal abuse by father, including drugging mother and shocking her with a stun gun. Mother testified that father experienced "significant mood swings." Mother testified, without objection, about what the children said father told them:

> Both of the girls have told me that, that Daddy told them that their Mommy was doing drugs, cocaine. They talked about alcohol.
>
> They talked about Daddy telling me that I was watching dirty movies, that I was going, I

was in the bathtub with men. That in the night I would sneak men in through the bedroom door.

> I was leaving them alone, that I was planning a trip to leave them and go to Colorado. Oh, a lot of, a lot of horrible, horrible lies. Cocaine, that I was doing cocaine....

There was evidence that father failed to return the children after an unsupervised visitation period. Father had taken the children the morning of December 27, 1995. He was to return them to a location where mother would meet them at 2:00 p.m. Father did not return the children. Mother did not see them for 9 days.

Father was located with the children in Kentucky. He said he would bring the children back. Mother and her father went to Kentucky and brought the children back with them. They remained in mother's custody from that time until the date of trial.

the physical health and emotional development of the children will not be endangered.

■ Point III is directed to trial testimony of Sharol McGehee, a clinical psychologist. Father consulted with Dr. McGehee. She interviewed him as a patient. Mother called Dr. McGehee as a witness and asked questions related to her evaluation of father as her patient. Father objected on the basis that his professional consultation with Dr. McGehee was privileged. The trial court overruled the objection and permitted Dr. McGehee's testimony. Point III contends the trial court erred in permitting the testimony because Dr. McGehee was father's treating psychologist. Father relies on § 491.060, RSMo 1994. It states:

The following persons shall be incompetent to testify:

. . .

(5) A physician licensed under chapter 334, RSMo, a licensed psychologist or a dentist licensed under chapter 332, RSMo, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe and provide treatment for such patient as a physician, psychologist or dentist.

Father asserts that he did not waive his privilege with respect to information Dr. McGehee obtained during the course of her treatment of him; that, therefore, the trial court erred in permitting her to testify. Father is correct that, absent other provisions of law, only he can waive the privilege established in § 491.060(5), RSMo 1994. *See State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 409 (Mo. banc 1996); *State ex rel. Dixon Oaks Health Center, Inc. v. Long*, 929 S.W.2d 226, 229 (Mo.App.1996). That privilege, however, has been vitiated by § 210.140, RSMo 1994, which states:

*Any legally recognized privileged communication, except that between attorney and client, shall not apply to situations involving known or suspected child abuse or neglect* and shall not constitute grounds

for failure to report as required or permitted by sections 210.110 to 210.165, to cooperate with the division in any of its activities pursuant to sections 210.110 to 210.165, or to give or accept evidence in any judicial proceeding relating to child abuse or neglect. [Emphasis added.]

The Eastern District of this court, relying on *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449 (Mo. banc 1984), held:

In keeping with the Supreme Court's broad interpretation of the statute we find § 210.140 [RSMo 1986[4]] prevents a party from invoking the physician-patient privilege in any custody proceedings involving known or suspected child abuse or neglect.

The trial court has an affirmative duty in ascertaining the best interests of the child. In order to make a sound and prudent judgment, the judge should be able to have at his/her disposal all available pertinent evidence in determining child custody. The legislature has given to the courts the tools to deal with this pervasive issue of child abuse and neglect and the trial courts should use them.

*Roth v. Roth*, 793 S.W.2d 590, 592 (Mo.App. 1990). This court agrees.

Roth involved statements made by a parent to a treating psychiatrist. The language is equally apropos to statements made by a parent to a treating psychologist. Point III is denied.

The part of the judgment prescribing father's supervised visitation to "be under such supervision and conditions as the mother determines that the children will be safe" and imposes the requirement that "[s]upervised visitation shall continue until father obtains counseling which results in the mother determining that the children will be safe" is indefinite and vague. It is reversed. In all other respects the judgment is affirmed. The case is remanded to the trial court to determine and impose conditions under which the supervised visitation may be exercised. The trial court may, in its discretion, make its determination on the basis of the

4. The 1994 revision of the statute, applicable   here, is the same as the 1986 revision.

evidence adduced at trial or conduct a further hearing for that purpose.

MONTGOMERY, C.J., and BARNEY, J., concur.

## ON MOTION FOR REHEARING OR ALTERNATIVE APPLICATION TO TRANSFER

PER CURIAM.

Father filed a motion for rehearing. The motion correctly points out that for Dr. McGehee's testimony concerning her treatment of father to have been admissible, there must have been an allegation or evidence of suspected child abuse or neglect. *See Roth v. Roth,* 793 S.W.2d 590, 592 (Mo.App.1990). The motion then suggests that the record on appeal does not reveal an allegation or evidence of child abuse or neglect.

As pointed out in *State ex rel. Scott v. Goeke,* 864 S.W.2d 411, 413 (Mo.App.1993), the dissolution of marriage chapter of the statutes, chapter 452, does not define child abuse. However, Missouri courts have utilized the definition in § 210.110(1), RSMo 1994, in dissolution of marriage cases. *See Dent v. Dent,* 965 S.W.2d 230, 235 (Mo.App. 1998); *H.J.I. by J.M.I. v. M.E.C.,* 961 S.W.2d 108, 114 (Mo.App.1998); *Holmes v. Holmes,* 878 S.W.2d 906, 911 (Mo.App.1994). It defines "[a]buse" as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse."

The opinion to which father's motion for rehearing is directed summarizes various evidence concerning father's actions with the children in n. 3. It includes testimony concerning demeaning and unsubstantiated remarks father made to children concerning their mother, as well as evidence concerning father taking the children to another state during a period of visitation and failing to return them as agreed. These actions and the effect they had on the children were not the result of "accidental means." A parent who demeans the other parent by inappropriate remarks to children, or who fails to return children to their primary custodian at the appointed time under the circumstances in evidence in this case, adversely affects the children's welfare. Such conduct can constitute emotional abuse and is consistent with a decision to appoint a guardian ad litem as was done in this case. *See* § 452.423, RSMo 1994.

The evidence summarized in n. 3 was sufficient evidence of abuse, or suspected abuse, to permit the testimony of Dr. McGehee to be admitted in evidence for purposes of ascertaining the best interests of the children in awarding custody. Other issues raised in father's motion for rehearing do not warrant further discussion. The motion for rehearing or alternative application to transfer is denied.