**D.M.K., b/n/f Edward R. Kolasky, and Edward R. Kolasky, Individually, Appellant,**

**v.**

**Amber Renee MUELLER, Respondent.**

**No. 25691.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 20, 2005.

Francis J. Murphy, III, Cordell & Cordell, P.C., St. Louis, for Appellant.

No appearance for respondent.

JOHN E. PARRISH, Presiding Judge.

Edward Ronald Kolasky (petitioner) appeals from the visitation and support awards included in a judgment that determined paternity, custody, support of, and visitation with D.M.K. The judgment declared petitioner as father of D.M.K. Petitioner and the child's mother, Amber Renee Mueller (respondent), were awarded joint legal custody of D.M.K. Respondent was awarded physical custody of D.M.K. Petitioner was allowed visitation rights at specified times. Petitioner was ordered to pay child support in the amount of $961 per month. This court reverses the part of the judgment that designates times of visitation to allow the trial court to make changes in the visitation schedule that are required by existing statutes and remands with directions. In all other respects the judgment is affirmed.

Prior to this proceeding, the Missouri Division of Child Support Enforcement entered a "Judgment and Order" dated May 16, 2001, that directed the Missouri Bureau of Vital Records to enter petitioner's name on the birth records of D.M.K. as D.M.K.'s father. The order further directed petitioner to pay child support in the amount of $600 per month and to maintain dependent health coverage for D.M.K. The order was entered by a person designated to conduct child support administrative hearings and render judgments pursuant to § 454.475.[1]

Petitioner initiated this action by filing a two-count petition in the Circuit Court of

---

1. References to statutes are to RSMo 2000 unless stated otherwise.

Crawford County, Missouri, on June 28, 2001. Count I of the petition requested an order declaring that petitioner is the natural father of D.M.K. Count II requested custody of D.M.K. to be placed with petitioner and that respondent be ordered to pay child support in the amount of $100 per month.

Respondent's answer included a request that she be awarded sole legal and physical custody of D.M.K. and that petitioner be ordered "to pay [her] child support in accordance with Form 14 and Rule 88." Respondent's answer sought modification of the child support judgment rendered by the Division of Child Support Enforcement alleging "[t]hat since the entry of said judgment, there has been a substantial and continuing change in the circumstances of Petitioner ... and Respondent ... such that, considering the financial resources of Petitioner and Respondent, the application of the child support guidelines and criteria set forth in Section 452.340 and Supreme Court Rule 88 to the financial circumstances of Petitioner and Respondent, would result in a change in the existing child support award by twenty percent or more."

Petitioner and respondent first contacted one another in February 1999 by communicating in an internet "chat room." Respondent was 18 years old. She lived in Bourbon, Crawford County, Missouri. Petitioner was 45 years old, albeit he told respondent he was 32. He lived in Tustin, California. In March 1999, petitioner flew from California to Missouri to meet respondent. Respondent returned the visit by going to California later that month, then again in May 1999.

In June 1999 the parties discovered respondent was pregnant with D.M.K. They communicated throughout the pregnancy. Petitioner visited respondent in Missouri "[s]even—[e]ight times" between learning respondent was pregnant and the child's birth. D.M.K. was born in Missouri in January 2000. When he was about two months old, respondent took him to California to visit. Respondent had planned to stay a week, but left with D.M.K. earlier than planned following an argument with petitioner.

Petitioner maintained telephone contact with respondent following the California visit. Petitioner drove to Missouri "around Labor Day weekend of 2000." He stayed in Missouri at Lake of the Ozarks for nine days. After several days, arrangements were made for him to visit respondent and D.M.K. He drove to Bourbon and picked up respondent and the baby. Respondent and D.M.K. spent the day with petitioner. It was late, so they decided to stay overnight. Petitioner took respondent and D.M.K. to respondent's house the next day. Petitioner stayed two additional nights at a nearby motel. Respondent and the baby stayed with him. Petitioner did not see D.M.K. again until Father's Day 2001. Petitioner came to Missouri. He stayed three days.

■ Petitioner's first point on appeal contends the trial court erred in entering judgment in this case. Petitioner argues the trial court "did not have subject matter jurisdiction to receive evidence and amend a previously existing Division of Child Support Enforcement child support order because [respondent] failed to first exhaust her administrative remedies in her attempt to modify the administrative order before filing for a modification of the administrative order before the circuit court." As this court perceives petitioner's complaint in Point I, he challenges the trial court's award of child support that exceeded the amount ordered by the Division of Child Support Enforcement. The administrative order directed petitioner to pay $600 per month. The judgment that is the subject

of this appeal ordered payment of $961 per month.

The Division of Child Support Enforcement award was entered pursuant to § 454.475. Neither party sought judicial review of the award as permitted by § 454.475.5. A copy of the order was filed with the Circuit Clerk of the county in which respondent and D.M.K. reside pursuant to § 454.490.1. It provides, "Upon filing, the clerk shall enter the order in the judgment docket. Upon docketing, the order shall have all the force, effect, and attributes of a docketed order or decree of the circuit court. . . ." *McCubbin v. Taylor,* 5 S.W.3d 202, 206 (Mo.App.1999), explains, "As the administrative order for child support has all the 'force, effect, and attributes' of a circuit court order, [a] trial court [has] subject matter jurisdiction to modify the administrative order, as the administrative order effectively became the court's order upon being docketed with the trial court." Section 454.490.1 has been held "not unconstitutional." *State ex rel. Hilburn v. Staeden,* 91 S.W.3d 607, 612 (Mo. banc 2002).

Petitioner nevertheless contends that *Hayes v. Porter,* 30 S.W.3d 845 (Mo.App. 2000), requires a party to first exhaust administrative remedies afforded by § 454.475.5 in order to be entitled to seek a change, or modification, of the terms of an administrative order. He argues, based on *Hayes,* that because respondent failed to seek administrative review of the administrative order that set child support at $600 per month, she cannot now seek its modification by the circuit court. Petitioner's reliance on *Hayes* is misplaced in that *Hayes* was an attack on the enforceability of an administrative order that had been entered some four years before rather than an attempt to modify child support prospectively.

Section 454.501 provides:

Nothing contained in sections 454.465 to 454.510 shall deprive courts of competent jurisdiction from determining the support duty of a parent against whom an order is entered by the director pursuant to the authority created by sections 454.460 to 454.505. Such a determination by the court *shall supersede the director's order as to support payments due subsequent to the entry of the order by the court, but shall not affect any support arrearage which may have accrued under the director's order.* The director's order shall be pleaded and received by the court as evidence of the extent of the parent's duty of support. [Emphasis added.]

*Hayes* involved an attempt to avoid payment of past amounts of child support. *Hayes* sought the determination that payments of arrearages due by the terms of the director's order were not owed. That is not the situation here. Here, respondent sought modification of the director's order. She sought an increase in future child support.[2] Point I is denied.

Points II and III assert trial court error as to the amount of child support awarded. Point II argues that the trial court erred in its Form 14 calculation of presumed child support. Point III com-

---

**2.** *Lewis v. Roskin,* 823 S.W.2d 152, 154 (Mo. App.1992), explains, "Section 454.501 provides that nothing in §§ 454.465 to 454.510 [RSMo 1986] shall deprive courts of competent jurisdiction from determining the support duty of a parent against whom an order is entered by the director, but such order shall not affect any support arrearage which may have accrued under the director's order." The provision of § 454.501 is unchanged since the 1986 revision cited in *Lewis.* This case does not involve a challenge to an arrearage. The trial court had jurisdiction to determine respondent's motion to modify the previously awarded child support.

plains that the trial court erred in not finding the presumed child support unjust or inappropriate. Petitioner's complaint in Point II is that the trial court failed to impute income to respondent. He argues that because respondent testified she was capable of earning more income than that assigned to her by the trial court, the trial court erred in calculating presumed child support.

■■■ Respondent was not employed outside the home at the time of trial. She had earnings, however, from babysitting a child in her home. She stated she earned between $30 and $60 per week.[3] Respondent testified that if she were not at home watching her child, she was capable of working and earning approximately $893 per month; that she planned to go to work "[t]he following month, in February" and she thought she could earn about $7 an hour. She explained that she would have to hire a babysitter if she returned to work. She had not actually inquired about employment, but planned to explore the possibility of daycare or childcare work.

The trial court has discretion in determining whether income should be imputed to a party for purposes of making child support calculations. *See Lavalle v. Lavalle*, 11 S.W.3d 640, 650 (Mo.App. 1999). Imputation decisions must be made on a case-by-case basis and only when appropriate circumstances are present. *See id.* It is not unusual for a court to decline to impute income to a custodial parent. *See id.* (citing numerous cases to that effect). *Engeman v. Engeman*, 123 S.W.3d 227, 238 (Mo.App.2003).

■■■ Factors considered in assessing whether to impute income to a custodial parent include the age and maturity of the child or children, the age and health of the parent, availability of appropriate child-care givers, relationship between the expense of child-care givers and the net income the custodial parent would receive, and custodial parents' motivations or reasons for remaining home with a child. *See Woolsey v. Woolsey*, 904 S.W.2d 95, 99 (Mo.App.1995). Further, a trial court's assessment of an amount of income to impute to a party must be supported by evidence at trial. *Monnig v. Monnig*, 53 S.W.3d 241, 247 (Mo.App.2001). The court is not allowed to set an amount of income solely based on speculation. *Id.*

Respondent was 18 years old when she met petitioner and became pregnant. No evidence was presented that she had ever been employed. She testified that she planned to become employed and thought she could earn $7 an hour. There was no evidence, however, of the type of employment opportunities that existed or evidence of her employment skills. The trial court's failure to impute income to respondent was not an abuse of discretion. Point II is denied.

■■■ Petitioner's argument in Point III that the trial court erred in failing to find the amount of presumed child support was unjust or inappropriate is based on his evidence that each of his Missouri visitations cost $1,000. The trial court's order allows petitioner 12 visitations per year with D.M.K., nine of which are to be in Missouri. The other three visits require the child to fly to California at petitioner's expense. Petitioner argues the trial court did not consider the expenses he must incur in order to exercise his rights of visitation with D.M.K. in determining the

---

**3.** The trial court assigned monthly gross income of $195 to respondent in its Form 14 calculation.

amount of child support he was ordered to pay.

Rule 88.01(b) provides that there is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the correct amount of child support to be awarded. *See also* § 452.340.9. Petitioner contends the trial court erred in not declaring that the presumed amount of child support was unjust or inappropriate; that it erred in failing to find that the presumed amount of child support was, under the facts of this case, rebutted. *See* Rule 88.01(b); § 452.340.9.

Contrary to petitioner's argument, the trial court considered the costs of petitioner's visits with the child in determining the amount of child support it awarded. The trial court's written findings include:

. . .

29. At trial, [petitioner] alleged he incurred expenses for each visit to Missouri in the approximate amount of $1,000, calculated as follows:

$450.00 Airline ticket

$300.00 $100.00 per night hotel expense

$100.00 Food

$150.00 Monthly expense for storage of vehicle kept in Missouri

30. [Respondent] should contribute in travel and visitation expenses incurred by [petitioner] in the same proportion as income is shared.... However, her proportionate share of monthly gross income is a mere 2.45%. The Court finds this to be a de minimis amount and refuses to order a contribution by [respondent].

■■■ Petitioner is a longtime resident of California. Respondent resided in Missouri with her family at the time he chose to meet her and engage in a sexual rela-

tionship that resulted in the birth of D.M.K. Petitioner is a professional land surveyor. The trial court found his monthly income to be $7,753. There is evidence that supports that finding. Respondent earns approximately $195 per month babysitting. The financial circumstance of the parties is an appropriate consideration in apportioning expenses incurred in exercising visitation. *Ronzio v. Ronzio*, 673 S.W.2d 100, 101 (Mo.App. 1984). A trial court is afforded broad discretion in apportioning those expenses. *Stanton v. Abbey*, 874 S.W.2d 493, 501 (Mo.App.1994). A trial court's determination of those expenses will be overturned only if there is a manifest abuse of discretion. *Id.* This court finds no such abuse of discretion. Point III is denied.

■■■ Points IV and V are directed to the visitation part of the judgment. Point IV argues the trial court erred in requiring visits to be conducted in Missouri. Point V contends it was error to not grant petitioner visitation on Father's Day and Christmas Day and in causing petitioner to have "to fly back and forth between Missouri and California" on the times visitation was awarded during the summer. Point IV complains that petitioner should not have been restricted to visits in Missouri "because there was no evidence ... that if [petitioner's] visitation were not restricted, the child's physical health or emotional development would be impaired or endangered."

The judgment specified petitioner's visitation schedule in considerable detail. He was allowed weekend visitations in Missouri with D.M.K. commencing on the fourth Friday in January, February, March, May, June, August, September, and October. He was awarded visitation in Missouri in November that alternates between Thanksgiving weekend in even-numbered years and the fourth weekend in

odd-numbered years. Petitioner was awarded "[o]ut-of-state" visitation with D.M.K. one week in April, three weeks in July until the age of six, and six weeks' summer visitation beginning in July after D.M.K. is six years old. He is allowed one week during Christmas vacation.

Petitioner bases Point IV on the language in § 452.400.2. However, § 452.400.2 relates to modification of a trial court's visitation order. *Buschardt v. Jones,* 998 S.W.2d 791, 799 (Mo.App.1999). The part of § 452.400.2 on which petitioner relies is found in the first sentence that states, "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, *but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.*" (Emphasis added.)

This case did not seek modification of visitation rights. Rather it is a case in which initial custody and visitation were awarded to the parties. Petitioner was awarded visitation as required by § 452.400.1. Section 452.400.2 is not applicable. Point IV is denied.

■ Petitioner complains in Point V that the custody schedule "is onerous and burdensome" because he is not given Father's Day with D.M.K. and does not have Christmas Day with D.M.K. He also complains that in order to exercise the visitation he was awarded in the summer, he must travel to Missouri on several occasions.

Petitioner suggests that this case is akin to *Maher v. Maher,* 951 S.W.2d 669 (Mo. App.1997), in which the mother of the child moved from Missouri to Florida with the child after dissolution of the parties' marriage. The time limitations on father's visitation in *Maher* included visitation for as little as 12 hours on Father's Day and 24 hours on the child's birthday. The father was also awarded visitation every other weekend in Florida until the child reached the age of eight and then every other weekend in Missouri. The court in *Maher* found that the visitation schedule that required traveling over 1000 miles every other weekend, either for father or the child, and visits for "as little as 9 or 12 hours" after traveling such distances was unnecessarily burdensome. *Id.* at 676.

*Maher* involved the modification of a custody award that was part of a dissolution judgment rather than an initial award of custody and visitation. The original award gave the parents joint legal and physical custody of the child. The modification that provided the visitation schedule was formulated in conjunction with an approval for the mother and the child to move to Florida. It called for extensive travel and limited the father's visitation to brief time periods. *Maher* held that the limitation imposed on the father's time with the child was an abuse of discretion by the trial court.

In this case, unlike in *Maher,* the geographical distance between petitioner's and respondent's places of residence did not occur after the birth of D.M.K. Further, although significant travel is required for petitioner to exercise the visitation he was allowed, petitioner was granted significant periods of time with D.M.K. during those visitations. Under the circumstances of this case, the trial court did not abuse its discretion in formulating petitioner's visitation schedule insofar as travel requirements and the amount of time allowed with D.M.K. are concerned.

Petitioner's complaint that he would "never have Christmas Day with [D.M.K.]" is erroneous. The visitation schedule awards father visitation with D.M.K. on Christmas Day every other year. Peti-

tioner was awarded visitation "[o]ut-of-state, in even-numbered years, Christmas vacation from 12:00 p.m. the day the child's school vacation begins, or December 21st if the child is not yet enrolled in school, through 6:00 p.m. on December 29th." Christmas Day is encompassed in this time period.

 Petitioner's complaint that the visitation schedule does not address visitation on Father's Day is meritorious. A judgment that provides for child custody is required to include a specific written parenting plan that sets forth arrangements specified in § 452.310.7. *See* § 452.375.9. A trial court is not free to disregard the events enumerated in § 452.310.7. *Simon–Harris v. Harris,* 138 S.W.3d 170, 182 (Mo.App.2004). "The plain language of § 452.375.9 requires the trial court to include a specific written parenting plan following section 452.310.7." *Id.*

Section 452.310.7(1)(c) requires the schedule detailing custody, visitation and residential time for a child with each party to include "[t]he child's birthday, Mother's Day and Father's Day." The judgment in this case does not do so. The part of the judgment detailing custody and visitation is reversed. The case is remanded with directions that the trial court prepare a parenting plan that complies with provisions of § 452.310.7. The actual time division otherwise provided by the judgment is not found to be erroneous. On remand the trial court need only write a compliant parenting plan. In the event the trial court concludes that some adjustment is required in the time division previously allowed in order to meet requirements of § 452.310.7, the trial court may, in its discretion, make the changes it deems necessary and appropriate. In all other respects, the judgment is affirmed.

BATES, C.J., and BARNEY, J., concur.