In re the MARRIAGE OF Patrick
Lynn MURPHEY and Angelic
Marie Murphey.

Patrick Lynn Murphey, Petitioner–
Appellant,

v.

Angelic Marie Murphey, Respondent–
Respondent.

No. 26809.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 4, 2006.

Richard D. Winders, Bolivar, MO, for Appellant.

John P. Lukachick, Springfield, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Patrick Lynn Murphey (Father) appeals from a modified judgment in a dissolution action that, *inter alia,* changed the primary residence of the parties' children, Patrick Murphey (Patrick) and Karen Murphey (Karen), from Father to Angelic Marie Murphey (Mother). Father presents five points of error on appeal. In Point III, Father contends the trial court misapplied the law in preparing the parenting plan because the court did not allocate parenting time with Patrick to either party on certain school holidays or Patrick's birthday. We agree. Therefore, the judgment is reversed in part, and the case is remanded with directions for the trial court to prepare a parenting plan that complies with all of the statutory requirements found in § 452.310.7.[1] In all other respects, we affirm.

The parties' original dissolution judgment was entered on September 5, 1990. The judgment was modified in October 1999 and again in December 2002. As best we can discern from the record on appeal, the 1999 judgment awarded Father and Mother joint legal and joint physical custody of four-year-old Patrick and ten-year-old Karen (hereinafter collectively referred to as "the children").[2] The children lived primarily with Father in Bolivar, Missouri. His residence was designated as their address for educational and mailing purposes. Mother lived in Sparta, Missouri.

In February 2004, Mother filed a motion to modify. She alleged that a substantial and continuing change of circumstances existed because Father emotionally and physically abused the children, and he refused to follow doctors' instructions regarding the children's medication and mental health care. Mother sought sole physical custody of the children and supervised visitation with Father. In April 2004, Father filed an answer denying the allegations upon which Mother relied to support a modification of the judgment. In addition, Father filed a counter-motion to modify in which he sought sole physical and legal custody of the children. To support the request for modification, Father's motion contained a farrago of 33 com-

---

1. All references to statutes are to RSMo (2000).

2. The legal file *does not include* copies of any of these judgments. We gleaned the nature of the custody award in the 1999 judgment from the allegations and admissions in the parties' cross-motions to modify.

plaints about Mother's conduct. Those allegations included the charge that "[Mother's] actions are abusive to the children." In May 2004, the trial court appointed William Stewart to act as the guardian ad litem (GAL) for the children.[3]

The motions to modify were tried in November 2004. Mother's witnesses included Karen's counselor, Dr. Robert Grant (Dr. Grant); and Patrick's counselor, Michelle Phillips (Counselor Phillips). Karen moved to Mother's house in February 2004. Dr. Grant testified that Karen had a "strained relationship" with Father and returning to live with him would be unhealthy. Dr. Grant also testified that Karen had a very close relationship with Patrick and should not be separated from him. Counselor Phillips agreed that the children had a close relationship and should not be separated. She also opined that it would be better for Patrick to reside with Mother. Patrick got along well with an older stepbrother at Mother's house and had developed other friendships in the community. In contrast, Counselor Phillips testified that Patrick had a very volatile relationship with a stepbrother residing in Father's residence, and generally felt "very isolated, like outside the family when he's with his dad, without having Karen or somebody. It's almost like he's a separate family member."

During the direct and cross-examinations of Father and Mother, they were questioned by counsel about whether they had abused their children.[4] Both parents denied doing so and testified at length about the specific accusations each had made against the other. In addition, Father called a witness from the Children's Division (the Division) to testify. Both parents had been investigated by the Division for various reasons. On each such occasion, the Division found that the parent's response to the problem was appropriate and that no further action was required.

The court decided to interview Karen and Patrick in chambers.[5] Prior to conducting the interviews, the court stated that it would not allow the parties' attorneys to directly question either child. The attorneys were provided an opportunity to submit written questions before each interview and to request that the court ask additional questions at the end of each interview. The main concern expressed by Father's attorney was that the judge have the opportunity to review a number of letters found in Karen's room and ask her questions about them. The court agreed to do so, and all parties were given copies of the documents the day before the interview by Father's attorney. The next day, the judge conducted each interview in the presence of the GAL and the attorneys for Father and Mother. Both children expressed their desire to live together and to live primarily with Mother. Karen, who was then five and one-half months pregnant, told the judge that she and Mother had already investigated special programs for teenage mothers at Sparta High School in which Karen hoped to participate.

On January 11, 2005, the trial court entered its third modified judgment and decree after finding that the existing judgment and parenting plan were no longer in the children's best interest due to a substantial and continuing change of circumstances. As before, the court awarded

---

3. Mother requested appointment of a GAL when she filed her motion to modify.

4. Father is represented by new counsel on appeal.

5. The GAL was adamantly opposed to the children being required to testify in front of their parents at trial because of the potential adverse effect it could have on the parent-child relationship. Father and Mother agreed not to call either child as a witness.

Mother and Father joint legal and physical custody of both children, but the 2005 modified decree provided that the children would reside primarily with Mother. The court adopted its own parenting plan after finding that the ones submitted by Father and Mother were not in the children's best interest. In the court's parenting plan, Father was granted parenting time with Patrick on Father's Day each year and on July 4th, Thanksgiving, Christmas Eve, Christmas and New Year's Eve of every other year. Mother was granted parenting time with Patrick each year on Mother's Day and on the same specific holidays as Father in alternate years. The court did not specifically provide for parenting time with either parent on Patrick's birthday or the other school holidays and breaks listed in § 452.310.7. The court restricted Father's parenting time with Karen to eight hours per month "[u]ntil such time as Father completes Anger Management and/or other counseling sessions, including family counseling with Karen . . . ." This appeal followed.

Father presents five points for decision. He contends the trial court erred in modifying the prior decree by: (1) finding that a substantial change in circumstances had occurred with respect to Patrick; (2) refusing to allow Father's counsel to directly question the children during their interview in chambers; (3) failing to specify parenting time with Patrick on certain holidays and special occasions listed in § 452.310.7; (4) requiring Father to complete counseling sessions as a condition precedent to spending parenting time with Karen; and (5) failing to require the GAL to demonstrate his investigation of the parties' allegations of abuse. Additional facts necessary to the disposition of the case are included below as we address Father's points.

*In re D.M.S.*, 96 S.W.3d 167 (Mo. App.2003) contains a succinct summary of the applicable standard of review:

> We will affirm a judgment in a custody modification case if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. When there is conflicting evidence, it is in the trial court's discretion to determine the credibility of the witnesses, and accept or reject all, part, or none of the testimony it hears. In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's judgment. Greater deference is given to a trial court's determination in matters involving child custody than in any other type of case. We exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong.

*Id.* at 171 (citations omitted). The trial court's decision in this court-tried case is presumed correct, and Father bears the burden of showing error. *McAllister v. McAllister,* 101 S.W.3d 287, 291 (Mo.App. 2003); *King v. King,* 976 S.W.2d 49, 52 (Mo.App.1998). "We will not reverse the trial court's judgment if there is no showing of prejudice as a result of that judgment." *Shields v. Shields,* 59 S.W.3d 658, 660 (Mo.App.2001); *McAllister,* 101 S.W.3d at 291.

*Point I*

In Father's first point, he contends the trial court erred in modifying the prior custody decree because there was insufficient evidence to support the court's findings that there had been a substantial change of circumstances with respect to

Patrick and that the new parenting plan served his best interests. We disagree.

■ Section 452.410.1 authorizes modification of a prior custody decree upon a finding by the trial court that "a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." *Id.; In re Marriage of Loftis,* 148 S.W.3d 315, 318 (Mo.App.2004). Viewing the evidence in light most favorable to the judgment, the court's findings on both issues are supported by the following substantial evidence: (1) Karen left Father's household because she and Father could not get along; (2) there was a very close bond between Karen and Patrick; (3) both the children's counselors testified that the children should not be separated; (4) Patrick did not get along with Father's stepchildren, but he did get along with Mother's stepchildren; and (5) both children expressed the desire to live together at Mother's residence. These changes in circumstances warranted a modified parenting plan that permitted the children to live together primarily at Mother's residence, and the new plan was necessary to serve the best interests of both Patrick and Karen. *See* § 452.410.1. The modified parenting plan also adhered to the principle that, absent unusual circumstances, siblings should not be separated. *See Tracy v. Tracy,* 961 S.W.2d 855, 858 n. 3 (Mo.App.1998); *Replogle v. Replogle,* 903 S.W.2d 551, 554 (Mo.App.1995).

■ Neither of the reasons advanced by Father in attacking the sufficiency of the evidence have any merit. Pursuant to § 452.375.2(8), one factor the court may consider in determining custody is "[t]he wishes of a child as to the child's custodian." The court specifically found "[t]he minor children have advised the Court that their preference for custodial placement would be with [Mother]." Father claims this finding with respect to Patrick's pref-

erence is not supported by the evidence. We disagree. During Patrick's interview, the court specifically asked "where do you think you want to stay?" Patrick answered, "[a]t my mom's." We also reject Father's assertion that Patrick's statements to the court during the interview could not be considered in determining whether a substantial change of circumstances had occurred. Section 452.385 specifically states, in pertinent part, that "[t]he court may interview the child in chambers to ascertain the child's wishes as to his custodian *and relevant matters within his knowledge.*" (Underlining added.) The reason a record of the interview must be made is so an appellate court can determine "to what extent, if any, the trial court relied upon the child's testimony in determining whether a change of circumstances has occurred and if modification of a prior custody decree is necessary in order to serve the best interests of the child." *Williams v. Cole,* 590 S.W.2d 908, 911 (Mo. banc 1979). Point I is denied.

### Point II

Father's second point is addressed to the in-chambers interview of the children that the trial court conducted pursuant to § 452.385. The following additional facts are relevant to our discussion of this point.

At the conclusion of Mother's evidence, the GAL requested that the court interview the children in chambers without either parent being present. The court advised counsel that they could submit proposed questions and exhibits to the judge, but he would conduct the questioning of the children. Any question the court declined to ask would be specifically identified for the attorneys so as to create an adequate record for appeal. Father's counsel initially objected to this procedure because he purportedly wanted to cross-examine Karen about certain let-

ters Father had discovered in her room. The court agreed to talk to Karen about the letters and instructed Father's counsel to prepare a list of questions he wanted the court to ask. Father's counsel expressed his satisfaction with that procedure:

> Let me state for the record ... that [Father] instructed me not to put these children on. But based upon your earlier comments, you said you're not going to be allowed to ask questions, and I thought I couldn't get these letters to the Court. If the Court addresses the letters, I'm good with that. I just, at the time, I was—you know, I really believed that was the only way I could get the letters in. And if they allow them in—and, you know, you're going to—you're going to judge whether those letters are worthwhile or not. That's your job. So if you get to see them, and you talk to her about them, I'm happy and [Father] won't fire me for putting his kids on the stand.

Father's counsel provided copies of the letters to opposing counsel and the trial court.

On the second day of trial, the court interviewed Patrick in chambers. The court covered a variety of topics, and that portion of the transcript covers 25 pages. At no point during the interview did Father's counsel voice any objection to the procedure or suggest that there were any additional questions he wanted the court to ask. Immediately after Patrick's interview concluded, Karen was questioned by the court. Once again, the court covered a variety of topics with her and, so far as we can discern, did inquire about many of the topics of concern in the letters found by Father. The transcript of Karen's interview covers 39 pages. At no point during

Karen's interview did Father's counsel object to the procedure utilized. At the conclusion of the interview, the court offered Father's counsel the opportunity to ask additional questions. In response, counsel said, "I'm not going to ask any questions, Judge. I think she's been very brave, and I'm proud of her." Mother's counsel suggested one additional question be posed to Karen, which she answered.

 In Father's second point, he contends the trial court misapplied § 452.385 in refusing to allow Father's counsel to directly question the children during their interviews because this statute permits "direct participation by counsel." Disposition of this point is governed by the general rule that a party may not complain on appeal of an alleged error in which he joined, acquiesced or invited by his conduct at trial. *Carter v. St. John's Regional Med. Ctr.*, 88 S.W.3d 1, 19 (Mo. App.2002); *Schroeder v. Lester E. Cox Med. Ctr., Inc.*, 833 S.W.2d 411, 424 (Mo. App.1992). Based on our review of the record, the extent of Father's participation in the children's interviews was limited by Father himself, rather than the trial court.[6] In addition, Father failed to preserve the issue for review because he did not: (1) object to the interview procedure ultimately used by the court; (2) advise the court of any specific questions he wanted to ask either child; or (3) explain how the answers to such questions would have provided the trial court with relevant information. *See, e.g., D.S.P. v. R.E.P. & D.P.*, 800 S.W.2d 766, 770–71 (Mo.App. 1990); *Wood v. Wood*, 709 S.W.2d 143, 146 (Mo.App.1986). Finally, Father's brief on appeal contains no explanation of how he was prejudiced by his alleged inability to directly question the children. Even as-

---

6. Father's counsel could have directly questioned Karen about any relevant matter by simply calling her as a witness at trial. *See* *Portwood–Hurt v. Hurt*, 988 S.W.2d 613, 620 (Mo.App.1999). It was Father who specifically forbade his attorney from doing so.

suming the trial court erred in not allowing direct questioning of the children by counsel, "[i]t is elementary that error without prejudice is not grounds for reversal." *Arndt v. Beardsley,* 102 S.W.3d 572, 576 (Mo.App.2003); *see also McAllister v. McAllister,* 101 S.W.3d 287, 291 (Mo.App. 2003); *Shields v. Shields,* 59 S.W.3d 658, 660 (Mo.App.2001); Rule 84.13(b).[7] Thus, Father has failed to carry his burden of demonstrating error. *McAllister,* 101 S.W.3d at 291; *Shields,* 59 S.W.3d at 661–62. Point II is denied.

### Point III

■ In Father's third point, he contends the trial court misapplied § 452.375.9 in preparing the parenting plan because the court did not allocate parenting time with Patrick to either party on Patrick's birthday, spring and winter breaks at school, Martin Luther King Day, Presidents' Day, Memorial Day, and Labor Day. We agree.

Section 452.375.9 provides, *inter alia,* that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.310.7, in turn, requires the parenting plan to include, in pertinent part:

(1) A specific written schedule detailing the custody, visitation and residential time for each child with each party including:

(a) Major holidays stating which holidays a party has each year;

(b) *School holidays* for school-age children;

(c) *The child's birthday,* Mother's Day and Father's Day;

(d) Weekday and weekend schedules and for school-age children how the

*winter, spring,* summer and other *vacations from school* will be spent. . . .

(Emphasis added.) The Missouri Supreme Court guidelines for a parenting plan specifically include a schedule for, *inter alia,* Martin Luther King Day, Presidents' Day, Memorial Day and Labor Day. V.A.M.S. § 452.310 at 166 (West 2003). "The plain language of section 452.375.9 requires the trial court to include a specific written parenting plan following section 452.310.7." *Simon–Harris v. Harris,* 138 S.W.3d 170, 182 (Mo.App.2004); *D.M.K. v. Mueller,* 152 S.W.3d 922, 930 (Mo.App.2005).

Because the judgment failed to contain all of the requirements for a parenting plan specified under sections 452.375.9 and 452.310.7, the case must be remanded to the trial court with directions to prepare a parenting plan in compliance with those statutory provisions. *In re Marriage of Parmenter,* 81 S.W.3d 234, 236–37 (Mo. App.2002). On remand, the trial court need only address parenting time on those occasions described above that were omitted from the plan. However, "[i]n the event the trial court concludes that some adjustment is required in the time division previously allowed in order to meet requirements of § 452.310.7, the trial court may, in its discretion, make the changes it deems necessary and appropriate." *D.M.K,* 152 S.W.3d at 930. Point III is granted.

### Point IV

■ In Father's fourth point, he contends the trial court misapplied the law in requiring Father to complete anger management or counseling sessions as a condition precedent to spending parenting time with Karen. Citing *Pilger v. Pilger,* 972 S.W.2d 628 (Mo.App.1998), Father argues the judgment is too vague to be enforced because the court failed to specify what

---

**7.** All references to rules are to the Missouri Court Rules (2006).

particular anger management or counseling sessions were required. This point fails because *Pilger* is factually distinguishable from the case at bar. The following additional facts are relevant to the discussion of this point.

Karen's counselor, Dr. Grant, testified that Karen moved from Father's home in February 2004 because she was in an "abusive situation." During counseling sessions, Karen said Father had struck her in the face with a belt and pushed her down on a bed. She feared on several other occasions that Father was going to hit her. Father also screamed at her, called her names and "cussed her out." Dr. Grant testified that, without family counseling sessions, the relationship between Karen and her father would not improve. During Patrick's interview, he described being lifted by his ears by Father as a disciplinary measure.[8] Father also spanked Patrick with a flyswatter and made him stand in the corner with his toes curled under his feet. In Karen's interview, she described incidents in which Father lost his temper, throwing a boot and a steak knife at his step-son and a syrup bottle at his wife. Karen asked Father to come to counseling, but he refused to do so. Karen wanted Father to undergo counseling so they could reconcile and learn to communicate without Father blowing up because he got "mean" when that happened. In Father's testimony, he acknowledged that he had been asked to attend counseling sessions. According to Father, he agreed to do so, but his attorney advised him against it. In the 2005 modified judgment, the trial court made the following finding:

> [Mother], Karen and Patrick are attending counseling sessions.... There are some allegations that [Father] is physically and emotionally abusive to the children. The evidence suggests that [Father] is at times verbally and emotionally abusive towards Karen. The evidence suggests that the allegations of physical abuse results from disciplinary methods employed by [Father]. The Court finds that the relationship between [Father] and the minor children would benefit from family counseling sessions.

The trial court also found that "forcing Karen to have contact with [Father] would impair her emotional development. The court finds that the best interest of Karen requires that [Father's] periods of visitation with Karen be restricted pursuant to the terms set forth in the Court's Parenting Plan...." In the parenting plan, the court only permitted Father to have restricted contact with Karen "[u]ntil such time as Father completes Anger Management and/or other counseling sessions, including family counseling with Karen...."

In sum, there was substantial evidence before the trial court demonstrating that Father had anger management issues, particularly with Karen, and that her relationship with Father would not improve without counseling. It was reasonable for the trial court to restrict Father's parenting time with Karen until such time as he completed anger management or family counseling sessions. *See, e.g., Ansevics v. Cashaw*, 881 S.W.2d 247, 253 (Mo.App. 1994) (trial court acted reasonably in deciding that counseling was necessary to establish a healthy relationship between parent and adopted child).

■ To support Father's argument that the counseling requirement in the judgment is too indefinite to be enforced, Father relies on *Pilger v. Pilger*, 972 S.W.2d 628 (Mo.App.1998). In *Pilger*, the

---

8. Father's wife, Nancy Murphey, testified that she did not employ this method of discipline because she was afraid it could injure the children.

judgment contained a condition that father's visitation be had under such supervision and conditions as the mother determined were necessary to ensure the safety of the children. We held this attempted restriction on father's visitation was too indefinite to be enforced because it did not define the circumstances for his visits. *Id.* at 630. "Provisions in a judgment should be definite and indefinite provisions are void and unenforceable." *Id. Pilger*, however, is distinguishable from the case at bar. The attempted restriction in *Pilger*—"under such supervision and conditions as the mother determines that the children will be safe"—is obviously subjective and insusceptible of enforcement unless the nature of the supervision and conditions are further defined. Moreover, the decree in *Pilger* left it up to the mother, rather than the trial court, to determine what manner of compliance was sufficient. In contrast, the trial court's requirement here that Father complete "Anger Management and/or other counseling sessions, including family counseling with Karen" is sufficiently objective and enforceable. That is particularly so here because Karen was already seeing a counselor who encouraged Father's participation, and the trial court specifically included "family counseling with Karen" as a way for Father to meet the court's counseling requirement. Point IV is denied.

### Point V

In Father's fifth point, he contends the trial court misapplied the law in failing to require the GAL to demonstrate his investigation of the parties' abuse allegations. As a preliminary matter, we note that Father never raised this issue below so as to give the trial court any opportunity to consider the matter. Consequently, Father failed to preserve this issue for appellate review. *In re Marriage of Demorrow,* 169 S.W.3d 591, 593 (Mo.App. 2005); *Ludwig v. Ludwig,* 126 S.W.3d 466,

472 (Mo.App.2004). We have the discretionary authority, however, to review this point for plain error. *Ludwig,* 126 S.W.3d at 472. "We will generally grant relief upon plain error review only upon a showing that a manifest injustice or a miscarriage of justice has occurred." *Id.; see* Rule 84.13(c).

It is a guardian ad litem's statutory duty to be the child's legal representative at the hearing and to conduct a sufficient investigation "to ascertain the child's wishes, feelings, attachments and attitudes." § 452.423.2(1)-(2). The record confirms that the GAL talked to Karen before trial and discussed with Father's attorney the concerns raised by the letters discovered in Karen's room. It was the GAL who recommended that the trial court conduct in-chambers interviews with the children to obtain their input on the issues presented. The court granted that request and conducted lengthy interviews with the children to obtain their custody preferences and other relevant information in their possession. The interview with Karen addressed matters of concern that were disclosed in her letters. The GAL also opposed the initial attempt by Father's attorney to require that the children be called as witnesses on the ground that such action would harm the parent-child relationship.

The GAL was present throughout the trial and participated therein. The issues of alleged abuse raised by parties' motions to modify were fully litigated. Mother's motion to modify alleged that Father physically and emotionally abused the children and refused to follow doctors' instructions concerning their medication and mental health. Father's counter-motion generically alleged that Mother's actions were abusive to the children. During the parties' direct and cross-examinations, they exhaustively discussed these charges and

counter-charges of abuse, so that information was before the court. Furthermore, accusations of abuse against both Mother and Father had been investigated by the Division. Father called a representative of that agency at trial, and she testified that the Division found the parents' responses to the various reported problems to be sufficient and to warrant no further action. During the trial, the GAL did conduct cross-examination of several of the witnesses in a non-repetitive fashion. Based on the record before us, it is evident that the trial court received input on what manner of custody arrangement would serve the children's best interest from their perspective. *See McCreary v. McCreary*, 954 S.W.2d 433, 448 (Mo.App. 1997). Thus, "[i]t cannot be said that the GAL did not contribute information to assist the court in its determination in this matter." *Portwood–Hurt v. Hurt*, 988 S.W.2d 613, 620 (Mo.App.1999).

Father relies on *Baumgart v. Baumgart*, 944 S.W.2d 572 (Mo.App.1997), to support his assertion that reversal is required. In *Baumgart*, there was "nothing in the record to indicate that the guardian ad litem conducted any investigation or interviews with people having contact with [child] or took any role at all outside the hearing in determining the best interests of the children, as required by statute." *Id.* at 579. Further, the GAL there appeared not to even have been aware of the current status or custody arrangements as to the children at the time of trial. *Id.* *Baumgart* is distinguishable because no such circumstances are present in the case at bar. Since the record before us warrants no such finding, we decline to review Point V for plain error review. *Demorrow*, 169 S.W.3d at 593–94.

The case is remanded with instructions to prepare a new parenting plan that specifies the parties' parenting time with Patrick on his birthday, spring and winter breaks at school, Martin Luther King Day, Presidents' Day, Memorial Day and Labor Day. In the court's discretion, the court may make any further changes in the parenting time that it deems necessary and appropriate. *See D.M.K. v. Mueller*, 152 S.W.3d 922, 930 (Mo.App.2005). In all other respects, the judgment of the trial court is affirmed.

GARRISON, J. and BARNEY, J. Concur.