Kelly Lynn **JOHNSON**, Petitioner–
Appellant,

v.

David Scott **DEBYLE**, Respondent–
Respondent.

No. SD 29612.

Missouri Court of Appeals,
Southern District,
Division One.

May 28, 2010.

Christopher S. Warden, Joplin, MO, for Appellant.

James R. Sharp, Springfield, MO, for Respondent.

DON E. BURRELL, Judge.

Kelly Johnson ("Mother") appeals the judgment[1] dissolving her marriage to David Debyle ("Father"). In seven, somewhat overlapping points on appeal, Mother alleges the court committed reversible error by: 1) awarding custody of the children to Father instead of to third-party intervenors; 2) issuing a parenting plan that is so vague and indefinite as to consti-

---

1. The judgment at issue is the second amended judgment of dissolution entered January 13, 2009.

tute an unenforceable, conditional judgment; and 3) wrongly dividing multiple bank accounts the parties held during the marriage. We affirm in part, reverse in part, and remand the cause for further proceedings consistent with this opinion.

### Factual and Procedural Background

Viewed in the light most favorable to the judgment, *Hunt v. Hunt*, 65 S.W.3d 572, 578 (Mo.App. S.D.2002), the facts are as follows. Mother and Father were married for almost eleven years when they separated in January of 2005. The parties have two minor children: L.D., born January 17, 1997; and K.D., born June 1, 2000.

On August 4, 2005, Mother filed a petition to dissolve the marriage. At some point after the petition was filed, Mother's parents, Carole and Earl Johnson ("Intervenors"), decided to seek custody of their grandchildren and were allowed to intervene in the case on June 18, 2007. The case was tried fourteen months later, on August 28, 2008. Mother requested sole custody of the children in her petition and at trial.

The trial court's judgment granted Father "sole legal and sole physical custody" of the children and found Mother to be an unfit parent. Although the court acknowledged that Father had narcissistic personality traits, it did not find him to be an unfit parent and found that Terry Wolf, a licensed professional counselor, best described Father's situation at the time of trial "by stating that Father had a toxic relationship with Mother exacerbating his narcissistic characteristics." Mother was awarded regular parenting time every other weekend and on Tuesdays after school, but had several restrictions placed on her visitation. The nature of those restrictions will be more fully discussed in our analysis of Mother's third point. Additional facts relevant to the disposition of this appeal will also be set forth in the context of our analysis of the points to which they relate.

### Standard of Review

In a dissolution proceeding, we will affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *In re Altergott*, 259 S.W.3d 608, 613 (Mo.App. S.D. 2008). Appellate courts should "exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and [should] do so only upon a firm belief that the judgment was wrong." *In re D.M.S.*, 96 S.W.3d 167, 171 (Mo.App. S.D.2003). We defer to the trial court's credibility determinations, recognizing that the court is free to accept or reject all, part, or none of the testimony presented. *Trunko v. Trunko*, 642 S.W.2d 673, 674–75 (Mo.App. E.D.1982). Especially in regard to child custody decisions, the trial court's determinations are entitled to deference even if some of the evidence would support a different conclusion. *MacCurrach v. Anderson*, 678 S.W.2d 459, 463 (Mo.App. E.D.1984); *Hunt*, 65 S.W.3d at 578.

### Analysis

*Points I, II, & IV: Custody of the Minor Children*

Mother's first, second, and fourth points all relate to her allegation that the trial court erred in awarding custody of the children to Father instead of to Intervenors because it failed to consider Father's domestic violence towards the children and his narcissistic personality disorder. As earlier noted, Mother testified at trial that she should be awarded sole custody of the children. Mother's assertion on appeal that custody of the children should have been awarded to In-

tervenors was not the relief she requested from the trial court. Furthermore, Intervenors have not appealed the trial court's custody decision.

■ "On appeal, a party is bound by the position he took in the trial court and will not be heard on a different theory." *In re Short*, 847 S.W.2d 158, 167 (Mo.App. S.D. 1993). Having asked the trial court to grant sole custody of the children to her, Mother is precluded from arguing on appeal that the trial court erred by failing to award custody to Intervenors. *See In re Murphey*, 207 S.W.3d 679, 688 (Mo.App. S.D.2006). Points I, II, and IV[2] are denied.

### Point III: Enforceability of the Parenting Plan

■ Mother's third point contends the provisions in the parenting plan that set forth the conditions Mother must meet before being allowed to exercise unsupervised visitation are so vague and indefinite that they render the judgment unenforceable as an unauthorized, conditional judgment.[3] We disagree.

■ "Provisions in a decree relating to child custody or visitation should be definite and indefinite provisions are void and unenforceable." *Hunt*, 65 S.W.3d at 577. As a general rule, a judgment is considered indefinite and unenforceable if "enforcement of [the] judgment is conditional upon the occurrence or non-occurrence of future acts." *Burch v. Burch*, 805 S.W.2d 341, 343 (Mo.App. E.D.1991). For example, provisions that order an automatic change of child custody when a future event occurs have regularly been held unenforceable because the judgment predetermines what would constitute a significant change in circumstances. *Id.*

Here, however, the terms challenged by Mother relate to the exercise of her visitation rights—they are not provisions that would pre-authorize a change in child custody. As earlier indicated, the trial court specifically found Mother to be an unfit parent based on her history of drug abuse. In light of that finding, the trial court's parenting plan provided that Mother's visitation with the children would be supervised unless certain conditions were met. The relevant provisions are as follows:

All of Mother's visitation pursuant to this Parenting Plan shall be supervised at all times by Parenting Solutions of Joplin or by Carole Johnson until such time that Mother submits to a hair follicle test and the test shows negative for all illegal substances. Mother shall be tested at Occumed and shall be photographed at each test to assure Mother's identity. Mother shall provide all test results to Father. After testing negative, Mother shall have unsupervised visitation as set forth herein, however Mother shall submit to hair follicle testing every 60 days thereafter and provide Father with copies of each test results [sic]. Should Mother fail a test or not provide a test result, then Mother's visitation shall be supervised at all times and continue to be supervised until Mother provides a negative hair follicle test result. Testing shall continue each

---

**2.** Mother's fourth point challenges the trial court's decision to allow Mr. Wolf to render expert testimony about Father's alleged personality disorder. Because the issue is relevant only to the court's custody decision, we need not address it.

**3.** Mother also challenges as vague and indefinite terms in the judgment that purport to govern when Father may cease attending court-ordered counseling for his alleged personality disorder. Because these terms relate only to Father (who does not appeal) and have no purported effect on Mother's visitation rights, they will not be addressed.

60 days until Mother has provided 12 consecutive negative test results. Thereafter, Mother shall submit to hair follicle testing upon written request of Father and at Father's cost unless the test shows positive in which event Mother shall pay for the test. Upon a positive test, Mother's visitation shall again be supervised until a negative hair follicle test result is provided. Mother shall thereafter again be tested every 60 days until 24 consecutive tests are negative. Mother shall bear the cost of all testing except a test requested by Father in writing that shows negative results. In addition to the hair follicle testing, [Mother] shall submit to UA testing within 24 hours of receipt of Father's written request. A positive test result for alcohol or illegal drugs shall be treated as and result in the same supervised visitation as a positive hair follicle test.

Contrary to Mother's assertion that these conditions allow Father to require "unlimited drug testing" before Mother may begin exercising unsupervised visitation, the above-quoted language indicates that Mother's visitation will be unsupervised as soon as she has one hair follicle drug test that shows a negative result. And, although Mother is correct in asserting that provisions governing whether visitation will be supervised or unsupervised must not be indefinite and vague, the case she cites, *Pilger v. Pilger*, 972 S.W.2d 628 (Mo.App. S.D.1998), does not help her.

In *Pilger*, the provision the court found unenforceable was "[t]he condition that visitation be 'under such supervision and conditions as the mother determines that the children will be safe[.]' " *Id.* at 630. The specific, detailed provisions governing whether Mother's visitation will be supervised or unsupervised in the case at bar are the antithesis of the provision found

unenforceable in *Pilger*. Point III is denied.

### Points V, VI, and VII: Property Division

Mother's fifth through seventh points all assert the trial court erred by failing to categorize certain property as marital or non-marital and then divide it in an equitable manner. Specifically, Mother challenges the distribution of accounts the parties had with Community Bank and Trust, American Century, Janus Fund, Signature Bank, and Arvest Bank.

Section 452.330 [4] governs the division of property in a dissolution proceeding. *Jarvis v. Jarvis*, 131 S.W.3d 894, 899 (Mo.App. W.D.2004). "It *mandates* a two-step process by the trial court: (1) the court must set aside to each spouse his or her separate property, and (2) divide the remaining marital property." *Tipton v. Tipton*, 993 S.W.2d 567, 568 (Mo.App. S.D.1999) (emphasis in original). This process requires the trial court to make individual findings as to whether each asset is marital or nonmarital property. *Id.* "Until a decision is made as to whether certain property is separate, this court can not adequately determine whether a just division of marital property occurred." *Id.* (quoting *In re Steele*, 844 S.W.2d 104, 105 (Mo.App. S.D. 1992)).

Here, the court's judgment, with one exception, simply awards property to Mother or Father without first determining whether the assets are marital or nonmarital. Without the trial court engaging in the mandatory two-step process outlined above, it is impossible for this Court to address Mother's arguments and determine if a just division of marital property occurred. *See Wilkerson v. Wilkerson*, 50

---

**4.** All statutory references are to RSMo 2000.

S.W.3d 281, 283 (Mo.App. S.D.2000). Points granted.

## Decision

The trial court's judgment is reversed as to the division of property. In all other respects, the judgment is affirmed. The case is remanded to the trial court which is hereby directed to first classify and then divide property in a manner consistent with the requirements of section 452.330. The trial court may, in its discretion, permit additional evidence to be presented on remand.

BARNEY, J., and BATES, P.J., Concur.